# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| RYAN MARSELIS, Individually and on Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>    v.<br><br>FOX FACTORY HOLDING CORP., MICHAEL C. DENNISON, DENNIS C. SCHEMM, BRENDAN R. ENICK, MAGGIE E. TORRES, and SCOTT R. HUMPHREY,<br><br>               Defendants. | Case No.<br><br>**<u>CLASS ACTION</u>**<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Ryan Marselis ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge to Plaintiff and Plaintiff's own acts; and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by Fox Factory Holding Corp. ("Fox Factory" or the "Company"), press releases and other announcements by the Company, and media and analyst reports about the Company. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## <u>NATURE OF THE ACTION</u>

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Fox Factory common stock between May 6, 2021 and November 2, 2023, inclusive (the "Class Period"), against Fox Factory and certain of its former and current officers and/or directors, seeking to recover damages for Defendants' violations of Section 10(b) and 20(a) of the U.S. Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder.

2.     Duluth, Georgia-based Fox Factory engineers, manufactures, and markets high-performance suspension products for numerous applications throughout the world.

3.     During the Class Period, Defendants made misleading statements and omissions regarding the Company's business, financial condition, and prospects. Specifically, Defendants misled the market concerning demand for Fox Factory's products and inventory levels.

4.     When the truth about Fox Factory's business reached the market, investors were harmed significantly.

5.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class members have suffered significant losses and damages.

## <u>JURISDICTION AND VENUE</u>

6.     The claims asserted herein arise under Section 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §78j(b) and 78t(a), as well as Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5.

7.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act.

8.     The Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act, 15 U.S.C. §78(a), and 28 U.S.C. §1391(b).  Fox Factory maintains

its headquarters in Duluth, Georgia, which is situated in this District, and many of the acts giving rise to the violations of law complained of occurred in this District.

9.    In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the instrumentalities of interstate commerce, including interstate wires, U.S. Postal Service mail, wireless spectrum, and the national securities exchange.

## PARTIES

10.   Plaintiff is a resident of Gilbert, Arizona.  Plaintiff purchased Fox Factory common stock as described in the attached Certification, incorporated by reference herein, and was damaged hereby.

11.   Defendant Fox Factory designs, manufactures, and markets performance-defining products and systems used primarily on bikes, side-by-sides, on-road vehicles with and without off-road capabilities, off-road vehicles and trucks, ATVs, snowmobiles, and specialty vehicles and applications.  Fox Factory is incorporated under the laws of the State of Delaware and maintains its principal executive offices at 2055 Sugarloaf Circle, Suite 300, Duluth, GA 30097.  Fox Factory's common stock trades on NASDAQ under the ticker symbol "FOXF."

12.   Defendant Michael C. Dennison ("Dennison") is and at all relevant times was, the Chief Executive Officer ("CEO") of Fox Factory.

13.     Defendant Dennis C. Schemm ("Schemm") is the Chief Financial Officer ("CFO") of Fox Factory.  Defendant Schemm was appointed CFO on June 12, 2023.

14.     Defendant Brendan R. Enick ("Enick") is the Chief Accounting Officer ("CAO") of Fox Factory.  Defendant Enick was appointed CAO on May 4, 2023.

15.     Defendant Maggie E. Torres ("Torres") was appointed Interim CFO on April 3, 2023, a position she held until June 12, 2023, when she resigned and moved to the role of Director of Accounting Projects.

16.     Defendant Scott R. Humphrey ("Humphrey") served as CFO of Fox Factory from August 4, 2020, until April 5, 2023.

17.     Defendants Dennison, Schemm, Enick, Torres, and Humphrey are referred to collectively herein as the "Individual Defendants."

18.     The Individual Defendants, because of their positions within the Company, possessed the power and authority to control the contents of Fox Factory's filings with the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions with the Company, and their access to material non-public information

available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

19.     Fox Factory engineers, manufactures, and markets high-performance suspension products for numerous applications throughout the world. The Company sells its products to Original Equipment Manufacturers ("OEMs"), retail dealers, and aftermarket-related distributors worldwide. The Company's products fall into two primary product categories: Specialty Sports (f/k/a Fox Factory's "Bike Division") and Powered Vehicles. Close to 60% of sales are suspension and related products for high-end mountain bikes, which fall within the Specialty Sports Group ("SSG"), while the remaining 40% is for ride-control products for its Powered Vehicles market, such as off-road vehicles, on-road pickup trucks, on-road motorcycles, and snowmobiles. About 75% to 80% of the Company's products are sold directly to OEMs, while the remaining 20% to 25% are sold to dealers and distributors for resale in the aftermarket.

## DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSIONS DURING THE CLASS PERIOD

20.     The Class Period starts on May 6, 2021, when Fox Factory announced its first quarter fiscal year 2021 ("1Q21") financial results and hosted a corresponding call with securities analysts that same day.  Touting "unprecedented demand growth," as evidenced by an 85.5% increase in SSG product sales, Fox Factory applauded the SSG team's ability to "complete all model year 2023 sell-in tools nearly six months ahead of the typical schedule," and told the market that the sales team could, as a result, "potentially capture additional market share," giving management confidence in their demand projections for the rest of 2021, which "remain[ed] very strong."

21.     On August 5, 2021, Fox Factory released its second quarter fiscal year 2021 ("2Q21") financial results, reporting a 63.9% increase in SSG sales quarter-over-quarter, driven by "continued high demand in the[] OEM channels," which shows "no signs of abating."  By "scal[ing] and accelerat[ing] production [and] managing [its] supply chain," Fox Factory was purportedly able to "deliver for [ ] customers in this robust demand environment."

22.     On November 4, 2021, Fox Factory released its third quarter fiscal year 2021 ("3Q21") financial results, reporting SSG sales growth of 48.1%, which was purportedly driven by "continued high demand in the OEM channel."  Fox Factory credited its ability to "deliver such staggering growth numbers quarter over quarter,"

to "the SSG team's ability to not only anticipate industry demand fluctuations, but also to scale and accelerate production to meet such levels of demand while managing supply chains, inflation, and labor challenges."  Because Fox Factory "keep[s] a finger on the pulse of demand, which continues to stay strong," Defendants claimed it was "in a strong position [with] a good view of demand throughout 2022 for both OEM and aftermarket orders."

23.    On February 24, 2022, Fox Factory released its fourth quarter fiscal year 2021 ("4Q21") financial results, reporting a seventh consecutive record revenue growth quarter for SSG, which delivered 46.7% growth on a quarter-over-quarter basis.  Defendants continued to characterize demand as "stay[ing] very robust," and expressed "reasonable confidence in [management's] current outlook."

24.    On May 5, 2022, Fox Factory released its first quarter fiscal year 2022 ("1Q22") financial results, delivering a little shy of $170 million in SSG sales, representing a 43.5% increase quarter-over-quarter.  Defendants stated that "the increase in [SSG] sales [was] driven by continued strong demand in both the original equipment manufacturer and aftermarket channels."  Defendants also advised that while "inventory levels for high-end mountain bikes and e-bikes remain low, at less than two months versus three to four months under normal circumstances . . . demand for mid- to high-end bikes along with e-bikes [remains] strong, supported by a growing enthusiastic base."

25.     On August 4, 2022, Fox Factory released its second quarter fiscal year 2022 ("2Q22") financial results, reporting its ninth consecutive record-revenue quarter for SSG, which grew 28.1% quarter-over-quarter, "primarily due to increased demand in [the] OEM channel."  Again, Defendants claimed to see high demand and improving supply chains.

26.     On November 3, 2022, Fox Factory released its third quarter fiscal year 2022 ("3Q22") financial results, reporting SSG growth of 9.1%, which was again primarily driven by "increased demand in [the] OEM channel."

27.     On February 23, 2023, Fox Factory released its fourth quarter fiscal year 2022 ("4Q22") financial results.  While the SSG segment declined 1.9% as compared to the same quarter the prior year, Defendants continued to tout increased demand primarily in the SSG OEM business, which they credited for helping Fox Factory achieve the 23.4% growth in full-year sales.  During the corresponding earnings call with securities analysts, Defendant Dennison characterized the Company's results as "substantially better than most of [Fox Factory's] peers," and further claimed that end customer demand was not a concern for Fox Factory, stating in relevant part:

> Let me start by saying that the volatility in sentiment and confidence within the industry is likely even greater than the volatility of demand. I believe end customer demand, even though seasonality has finally returned, continues to be generally positive and the largest challenges are a function of supply chain bloat and the corresponding cash flow challenges within our OEM and aftermarket partners.

> [T]hese next couple of quarters will provide the time necessary to get back to equilibrium between supply and demand and the persistent issues of semi-finished bikes and excess inventory, paving a path for a strong second half.

28.     Later in the call, Defendant Dennison reinforced that "the glut [he's] talking about is not retail inventory" and doubled down on his assertion that demand remained strong, stating in relevant part:

> It's really about the speed in which the current inventory growth kind of cleans itself up. So if that happens majority in Q1 and you see it much better in the range. If you see it happen in Q3, it's going to be much worse in the range. So it's not much of, it's not really as much about demand. And again, as I said in the comments, I think demand is actually more positive than people give a credit for. It's just that we've got a lot of big partners, big companies out there that are trying to chew through some clunky inventory systems and current inventory levels in their supply chains.

29.     On May 4, 2023, Fox Factory released its first quarter fiscal year 2023 ("1Q23") financial results. Despite reporting a decline in its SSG business, Defendants assured the market that they continued to "see positive signs with end customer demand." In fact, during the Company's corresponding analyst call, Defendant Dennison claimed to be "seeing customer demand in certain markets picking back up[,]" which gave "us confidence that the demand is not necessarily gone. As a matter of fact, it hasn't gone in SSG."

30.     On August 3, 2023, Fox Factory released its second quarter fiscal year 2023 ("2Q23") financial results, reporting a third consecutive quarter of declining

SSG sales.  Notwithstanding, the Company reaffirmed its full-year guidance based, in part, on customers "putting their foot on the gas pretty quickly [and] want[ing] to get into [ ] new model years as fast as possible."   During the Company's corresponding earnings call, Defendant Dennison again claimed that "demand actually [has] stay[ed] strong," and that "demand actually hasn't been the problem."

31.   The statements referenced in ¶¶20-30 were materially false and misleading because they concealed a deterioration in Fox Factory's business, in particular, increased inventories that were impacting demand.

## THE TRUTH IS REVEALED

32.   On November 2, 2023, after the markets closed, Fox Factory filed a Form 8-K with the SEC, reporting that its net sales for the third quarter of fiscal year 2023 decreased 19.1% year-over-year due to "higher levels of inventory across various channels."   In addition, Fox Factory cut its full-year sales guidance from between $1.67B and $1.70B to between $1.45B and $1.47B, citing continued inventory destocking in its SSG segment.

33.   On this news, the price of Fox Factory's common stock declined $22.60, or 37.34%, to close at $60.53 per share on November 3, 2023, on unusually high trading volume.

34.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## CLASS ACTION ALLEGATIONS

35.    Plaintiff brings this action as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class, consisting of all persons and entities that purchased Fox Factory common stock between May 6, 2021, and November 2, 2023, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

36.    The members of the Class are so numerous that the joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members of the proposed Class.  Throughout the Class Period, Fox Factory common stock was actively traded on the NASDAQ (an open and efficient market) under the symbol "FOXF."  Millions of Fox Factory shares were traded publicly during the Class Period on the NASDAQ.  As of October 26, 2023, there were 42,380,934 shares of

Fox Factory common stock outstanding.  Record owners and other members of the Class may be identified from records maintained by Fox Factory or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

37.    Plaintiff's claims are typical of the claims of the other members of the Class as all members of the Class were similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

38.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

a)    whether the Exchange Act was violated by Defendants;

b)    whether Defendants omitted and/or misrepresented material facts;

c)    whether Defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

d)    whether Defendants knew or deliberately disregarded that their statements were false and misleading;

e)    whether prices of Fox Factory common stock were artificially inflated; and

f)      the extent of damage sustained by Class members and the appropriate measure of damages.

39.    Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

40.    Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

41.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## UNDISCLOSED ADVERSE INFORMATION

42.    The market for Fox Factory's common stock was an open, well-developed, and efficient market at all relevant times.  As a result of the materially false and/or misleading statements and/or omissions particularized in this Complaint, Fox Factory's common stock traded at artificially inflated prices during the Class Period.  Plaintiff and the other members of the Class purchased Fox Factory, relying upon the integrity of the market price of the Company's common stock and market information relating to Fox Factory and have been damaged hereby.

43.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Fox Factory's common stock by publicly

issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Fox Factory's business, operations, and prospects as alleged herein. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its business, thus causing the Company's common stock to be overvalued and artificially inflated or maintained at all relevant times. Defendants' materially false and/or misleading statements during the Class Period directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class who purchased Fox Factor's common stock at artificially inflated prices and were harmed when the truth was revealed.

## SCIENTER ALLEGATIONS

44. As alleged herein, Defendants acted with scienter in that Defendants knew or were reckless as to whether the public documents and statements issued or disseminated in the name of the Company during the Class Period were materially false and misleading; knew or were reckless as to whether such statements or documents would be issued or disseminated to the investing public; and knowingly

and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

45.    As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Fox Factory, their control over, receipt, and/or modification of Fox Factory's allegedly materially misleading statements and omissions, and/or their positions within the Company, which made them privy to confidential information regarding Fox Factory, participated in the fraudulent scheme alleged herein.

### INAPPLICABILITY OF STATUTORY SAFE HARBOR

46.    The federal statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.  The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward-looking, they were not identified as "forward-looking statements" when made, and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

47.    In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants

are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Fox Factory who knew that the statement was false when made.

## LOSS CAUSATION

48.    During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of Fox Factory common stock and operated as a fraud or deceit on purchasers of Fox Factory common stock.   As detailed above, when the truth about Fox Factory's misconduct was revealed, the value of Fox Factory's common stock declined precipitously as the prior artificial inflation no longer propped up the common stock price.  The decline in the price of Fox Factory common stock was the direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market.   The timing and magnitude of the share-price decline negate any inference that the losses suffered by Plaintiff and other members of the Class were caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to Defendants' fraudulent conduct.  The economic loss, *i.e.*, damages, suffered by Plaintiff and other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the price of Fox

Factory common stock and the subsequent significant decline in the value of Fox Factory common stock when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

## APPLICABILITY OF PRESUMPTION OF RELIANCE

49.    Plaintiff and the Class are entitled to a presumption of reliance under *Affiliated Ute Citizens v. U.S.*, 406 U.S. 128 (1972), because the claims asserted herein against Defendants are predicated upon omissions of material fact for which there was a duty to disclose.

50.    Plaintiff and the Class are also entitled to a presumption of reliance pursuant to *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), and the fraud-on-the-market doctrine because the market for Fox Factory common stock was an efficient market at all relevant times by virtue of the following factors, among others:

a)    Fox Factory common stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient market;

b)    Fox Factory regularly communicated with public investors via established market-communication mechanisms, including the regular dissemination of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

17

c)      Fox Factory was followed by a number of securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  These reports were publicly available and entered the public marketplace.

51.    As a result of the foregoing, the market for Fox Factory common stock promptly incorporated current information regarding the Company from publicly available sources and reflected such information in the prices of the common stock. Under these circumstances, all those who transacted in Fox Factory common stock during the Class Period suffered similar injury through their transactions in Fox Factory common stock at artificially inflated prices and a presumption of reliance applies.

52.    Without knowledge of the misrepresented or omitted material facts, Plaintiff and other Class members purchased and/or acquired Fox Factory common stock between the time Defendants misrepresented and failed to disclose material facts and the time the true facts were disclosed.  Accordingly, Plaintiff and other Class members relied, and are entitled to have relied, upon the integrity of the market price of Fox Factory common stock and are entitled to a presumption of reliance on Defendants' materially false and misleading statements and omissions during the Class Period.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

**(Violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5)**
**Against All Defendants**

53.     Plaintiff incorporates ¶¶1-52 by reference.

54.     During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

55.     Defendants violated §10(b) of the Exchange Act and SEC Rule 10b-5 in that they:

      a)      employed devices, schemes, and artifices to defraud;

      b)      made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

      c)      engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of Fox Factory common stock during the Class Period.

56.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Fox Factory common

stock. Plaintiff and the Class would not have purchased Fox Factory common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

## SECOND CLAIM FOR RELIEF

### (Violation of Section 20(a) of the Exchange Act)
### Against the Individual Defendants

57. Plaintiff incorporates ¶¶1-56 by reference.

58. The Individual Defendants acted as controlling persons of Fox Factory within the meaning of §20(a) of the Exchange Act. By reason of their positions with the Company, the Individual Defendants had the power and authority to cause Fox Factory to engage in the wrongful conduct complained of herein. Fox Factory controlled the Individual Defendants and all of its employees. By reason of such conduct, Defendants are liable pursuant to §20(a) of the Exchange Act.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, individually and on behalf of the Class, prays for relief and judgment as follows:

a) Declaring this action to be a proper class action pursuant to Fed. R. Civ. P. 23 and appointing Plaintiff as a lead plaintiff and approving his selection of lead counsel;

b) Awarding Plaintiff and the members of the Class damages, including interest;

c)      Awarding Plaintiff reasonable costs and attorneys' fees; and

d)      Awarding such equitable/injunctive or other relief as the Court may

deem just and proper.

## **JURY DEMANDED**

Plaintiff demands a trial by jury.


Dated: February 20, 2024        **EVANGELISTA WORLEY, LLC**

                                /s/ *James M. Evangelista*
                                James M. Evangelista
                                Georgia Bar No. 707807
                                10 Glenlake Parkway
                                South Tower, Suite 130
                                Atlanta, GA 30328
                                Telephone: 404-205-8400

                                Thomas L. Laughlin, IV (*pro hac vice*
                                forthcoming)
                                Jonathan Zimmerman (*pro hac vice* forthcoming)
                                **SCOTT+SCOTT ATTORNEYS AT LAW
                                LLP**
                                The Helmsley Building
                                230 Park Avenue, 17th Floor
                                New York, NY 10169
                                Telephone: 212-233-6444
                                Facsimile: 212-233-6334
                                tlaughlin@scott-scott.com
                                jzimmerman@scott-scott.com

Brian J. Schall
**THE SCHALL LAW FIRM**
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Telephone: 310-301-3335
Facsimile: 310-388-0192
brian@schallfirm.com

*Counsel for Plaintiff Ryan Marselis*