# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

RYAN MARSELIS, Individually and on Behalf of All Others Similarly Situated,

      Plaintiff,

v.

FOX FACTORY HOLDING CORP., et al.,

      Defendants.

Civil Action No. 1:24-cv-00747-TWT

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS ALL CLAIMS IN AMENDED COMPLAINT

SQUIRE PATTON BOGGS (US) LLP

Joseph C. Weinstein (admitted *pro hac vice*)
joe.weinstein@squirepb.com
Sean L. McGrane (admitted *pro hac vice*)
sean.mcgrane@squirepb.com
Anna N. Huttner (admitted *pro hac vice*)
anna.huttner@squirepb.com
1000 Key Tower
127 Public Square
Cleveland, OH 44022
(216) 479 8500

Petrina Hall McDaniel
1230 Peachtree Street NE, Ste. 2200
Atlanta, GA 30309
(678) 272 3207
petrina.mcdaniel@squirepb.com

*Counsel for Defendants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................. ii

PRELIMINARY STATEMENT ........................................................................1

I.    LAW AND ARGUMENT ........................................................................2

    A.    Lead Plaintiff fails to plead falsity with particularity. ..........................2

        1.    Lead Plaintiff barely defends his cut and paste approach..........2

        2.    The statements were not false. ...................................................3

        3.    The alleged misstatements are not actionable in any
             event. .........................................................................................5

    B.    Lead Plaintiff fails to plead scienter with particularity.........................8

        1.    Lead Plaintiff's does not plead scienter "holistically". ..............8

        2.    The Amended Complaint does not plead
             contemporaneous knowledge or facts........................................9

        3.    Lead Plaintiff's "other factors" (Opp. at 22) do not show
             scienter, individually or holistically........................................12

        4.    The more compelling inference is nonfraudulent.....................13

    C.    Lead Plaintiff fails to plausibly plead loss causation..........................14

II.    CONCLUSION......................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aaron's, Inc. Sec. Litig.*,
    2018 WL 11343741 (N.D. Ga. Sept. 26, 2018)....................................................3

*Cambridge Ret. Sys. v. MEDNAX, Inc.*,
    2019 WL 4893029 (S.D. Fla. Oct. 3, 2019) ......................................................2

*Carvelli v. Ocwen Fin. Corp.*,
    934 F.3d 1307 (11th Cir. 2019) ......................................................................6, 7

*City of Pompano Beach Gen. Emps. Ret. Sys. v. Synous Fin. Corp.*,
    2011 WL 13130185 (N.D. Ga. 19, 2011)........................................................2, 3

*City of Pontiac Gen. Emps. Ret. Sys. v. Schweitzer-Mauduit Int'l, Inc.*,
    806 F. Supp. 2d 1267 (N.D. Ga. 2011)................................................................9

*In re Coca-Cola Enterprises Inc. Sec. Litig.*,
    510 F. Supp. 2d 1187 (N.D. Ga. 2007)..............................................................10

*In. re Equifax Inc. Sec. Litig.*,
    357 F. Supp. 3d 1189 (N.D. Ga. 2019).........................................................6, 14

*In re Harman Int'l Indus., Inc. Sec. Litig.*,
    791 F.3d 90 (D.C. Cir. 2015)..............................................................................7

*In re HomeBanc Corp. Sec. Litig.*,
    706 F. Supp. 2d 1336 (N.D. Ga. 2010).............................................................11

*Jackson Inv. Grp., LLC v. Thomas*,
    325 F. Supp. 3d 1334 (N.D. Ga. 2017).........................................................9, 12

*Mizzaro v. Home Depot, Inc.*,
    544 F.3d 1230 (11th Cir. 2008) .....................................................................8, 9

*Mogensen v. Body Cent. Corp.*,
    15 F. Supp. 3d 1191 (M.D. Fla. 2014).............................................................11

*Monroe Cnty. Emp. Ret. Sys. v. S. Co.*,
   333 F. Supp. 3d 1315 (N.D. Ga. 2018)..................................................................12

*Muhammad v. Verizon Wireless (VAW) LLC*,
   2015 WL 13774014 (N.D. Ga. Dec. 22, 2015) ...................................................12

*Neb. Inv. Council v. Fidelity Nat'l Info. Servs., Inc.*,
   2024 WL 4349125 (S.D.Fla. 2024) .......................................................................7

*In re Sci.-Atlanta, Inc. Sec. Litig.*,
   239 F.Supp.2d 1351 (N.D.Ga. 2002)....................................................................7

*Stein v. Aaron's, Inc.*,
   2022 WL 4588410 (N.D. Ga. Sept. 29, 2022).....................................................12

*Tung v. Dycom Indus., Inc.*,
   454 F.Supp.3d 1244 (S.D.Fla. 2020) ....................................................................7

*In re Tupperware Brands Corp. Sec. Litig.*,
   2023 WL 5091802 (11th Cir. Aug. 8, 2023) .........................................................2

*In re Urban Outfitters, Inc. Sec. Litig.*,
   103 F.Supp.3d 635 (E.D.Pa. 2015).......................................................................7

*Waterford Township Gen. Employees Retirement Sys. v. BankUnited
   Financial Corp.*,
   2010 WL 1332574 (S.D. Fla. Mar. 30, 2010) ....................................................11

*Waterford Twp. Gen. Emps. Ret. Sys. v. CompuCredit Corp.*,
   2009 WL 4730315 (N.D. Ga. Dec. 4, 2009)........................................................13

*Waterford Twp. Gen. Emps. Ret. Sys. v. Suntrust Banks, Inc.*,
   2010 WL 3368922 (N.D. Ga. Aug. 19, 2010) ....................................................15

## PRELIMINARY STATEMENT

Lead Plaintiff is the only plaintiff and only FOXF shareholder to file a putative class action for securities fraud.  He accuses Defendants of painting an overly "rosy" picture of consumer demand during the alleged Class Period.  But this accusation is belied by his own Amended Complaint ("AC"), which shows that Defendants' disclosures and guidance during the Class Period were not overly "rosy" or otherwise false or misleading in any way. To the contrary: As pleaded in the Amended Complaint, Defendants' statements during the Class Period were (i) consistent with FOXF's performance during the Class Period, when consolidated revenues increased from approximately $280M in the first quarter of 2021 to approximately $400M in the second quarter of 2023; and (ii) accompanied by disclosures that the pandemic-fueled increase in demand was not permanent and was likely to normalize.   There was simply nothing fraudulent about Defendants' disclosures to the market.

Lead Plaintiff ignores this in his opposition brief (the "Opposition Brief") and attempts to spin a tale of securities fraud by rehashing the vague and conclusory – and legally insufficient – allegations of the Amended Complaint.  As stated herein and in Defendants' opening motion to dismiss brief (the "Opening Br."), Lead Plaintiff's claims should be dismissed because he has failed to plead falsity and

scienter with the particularity required by the PSLRA, and also has failed to plausibly plead loss causation.

## I.    LAW AND ARGUMENT

### A.    Lead Plaintiff fails to plead falsity with particularity.

#### 1.    Lead Plaintiff barely defends his cut and paste approach.

To plead falsity with the particularity required by the PSLRA and thereby avoid dismissal, a plaintiff must "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." *In re Tupperware Brands Corp. Sec. Litig.*, 2023 WL 5091802, at *3 (11th Cir. Aug. 8, 2023). Instead of identifying each allegedly false statement and the particular reason each such statement is alleged to be false, Lead Plaintiff here "cuts and pastes" the same exact list of three or four boilerplate reasons why the statements were false and repeats the same boilerplate list throughout the Amended Complaint, across the many different statements during the two-and-a-half year Class Period. AC ¶¶ 65-67; 73-74; 86-87; 97-98; 104-05; 111-12; 120-21; 128-29; 136-37; 143-44. Courts have held that repeating a "litany of boilerplate allegations . . . do[es] not even come close to meeting the pleading standard for fraud [under] . . . the PSLRA." *Cambridge Ret. Sys. v. MEDNAX, Inc.*, 2019 WL 4893029, at *20 (S.D. Fla. Oct. 3, 2019).[1]

---

[1] Lead Plaintiff cites only one case to defend his approach, *City of Pompano Beach Gen. Emps. Ret. Sys. v. Synous Fin. Corp.*, 2011 WL 13130185 (N.D. Ga. 19, 2011). This case, however, does not endorse the "puzzle pleading" approach used by Lead

Lead Plaintiff barely attempts to defend his boilerplate approach to pleading falsity, burying his discussion of this fatal defect in one paragraph on page 17 of his Opposition Brief.  He does not identify even a single example from the Amended Complaint in which he sufficiently specifies with particularity the reason an alleged misstatement or omission is false or misleading.  Instead, when arguing that he has sufficiently pleaded falsity, he uses a "see generally" citation that spans nearly half of the Amended Complaint. Opp. at 17.  This "see generally" citation to large swaths of the Amended Complaint is telling: Lead Plaintiff cannot point to particularized factual allegations in the Amended Complaint, so he instead directs Defendants and the Court "generally" to large portions of the Amended Complaint that employ the same repetitive, boilerplate list.  This is a systematic failure to plead falsity with particularity that, by itself, warrants dismissal under the PSLRA.  *See In re Aaron's, Inc. Sec. Litig.*, 2018 WL 11343741, at *8 (N.D. Ga. Sept. 26, 2018).

### 2.    The statements were not false.

Lead Plaintiff alleges, and does not dispute, that FOXF's consolidated revenues boomed during the Class Period.  As alleged in the Amended Complaint, consolidated revenues grew from $281.M in the first fiscal quarter of 2021, up to $400.7M in the second quarter of 2023.  AC ¶¶ 59, 138.  He also admits that FOXF

---

Plaintiff.  *Pompano* simply observed that the plaintiff's complaint was "unlike more egregious examples" of insufficient complaints. The Amended Complaint here is just like those more egregious examples.

routinely made disclosures during the Class Period that demand would likely "normalize" and return to "pre-pandemic market conditions." *See, e.g.,* AC ¶ 132. He further alleges and admits that FOXF disclosed its inventory levels, broken down by business division, in every single quarter of the Class Period. *See id.* ¶ 27. None of these disclosures—revenue numbers, inventory levels, a return to pre-pandemic conditions—are alleged to have been false.

So where is the fraud? At footnote 2 of his Opposition Brief, Lead Plaintiff argues that Defendants' statements were false and misleading because Defendants "misled investors regarding ***the reasons inventory was increasing***." Opp. at 9, n.2 (emphasis in original). During the Class Period, FOXF disclosed that it was deliberately increasing inventory levels to, *inter alia*, "mitigate risks associated with supply chain uncertainty" and ensure that it had the materials and inventory necessary to meet customer demand during the pandemic. *See* AC ¶ 108. Lead Plaintiff argues this was a lie—that inventory levels were increasing because demand was slowing, not because FOXF was proactively staying ahead of any supply chain issues that might disrupt sales, the latter being the more compelling nonfraudulent inference, *see* Opening Br. at 22-23, as well as being true.

Lead Plaintiff, however, pleads no particularized factual allegations to support his theory and cites to none in his brief. Instead, he relies almost exclusively upon the tangential accounts of anonymous "former employees" and an employee of one

- 4 -

of FOXF's customers—none of whom are alleged to have held executive positions within FOXF, none of whom are alleged to have had access to companywide financial information or accounting data, and with each of the FOXF former employees offering only isolated, localized and immaterial allegations regarding excess inventory at certain warehouses at certain points in time. *See, e.g.,* AC ¶¶ 36-37. These allegations merely show that FOXF was increasing inventory levels during the pandemic, as it disclosed; they do not show that FOXF was lying to the market about the reasons for the inventory buildup. *See also infra* note 6. Indeed, even taking the allegations of the anonymous employees at face value, there is nothing in the Amended Complaint to suggest that any of them had sufficient information to know, one way or the other, why inventory levels were increasing.[2]

### 3. The alleged misstatements are not actionable in any event.

Finally, Lead Plaintiff fails to plead falsity because the alleged misstatements are not actionable as a matter of law: They are either immaterial puffery or protected by the PSLRA's "safe harbor" for forward looking statements.

---

[2] Lead Plaintiff's argument regarding FOXF's disclosure of Remaining Performance Obligations ("RPOs") beginning in 2021 can be rejected for the reasons stated in Defendants' Opening Brief—RPOs are consistent with GAAP and FASB ASC 606, and there is no allegation in the Amended Complaint that the RPO disclosures were inaccurate. Opening Br. at 11. Likewise, Lead Plaintiff's argument regarding the purported "pulling forward" of revenues appears to be based on an allegation attributed to FE4 involving a single customer, "Wheel Parts," in Gainesville. (AC ¶¶ 50-52.) This does not show falsity of the underlying statements.

"Puffery comprises generalized, vague, nonquantifiable statements of corporate optimism" that are immaterial under the federal securities laws and thus cannot give rise to a claim for securities fraud. *See Carvelli v. Ocwen Fin. Corp.,* 934 F.3d 1307, 1318 (11th Cir. 2019). Lead Plaintiff does not dispute this, but cites this Court's opinion in *Equifax* for the proposition that "context matters" in determining whether a statement is puffery. Opp. at 14-15. This is true—but here, the context is markedly differently than in *Equifax*. In *Equifax*, this Court held that defendant Equifax's repeated statements that its data privacy systems "were secure" was not puffery, because Equifax was alleged to have "failed to employ some of the most elementary cybersecurity practices." *In re Equifax Inc. Sec. Litig.*, 357 F. Supp. 3d 1189, 1223-24 (N.D. Ga. 2019). Here, Defendants' statements that, for example, "the bike business continues to look strong" or that demand for e-bikes was "relatively strong" were made in the context of FOXF undisputedly experiencing unprecedented revenue growth and demand. Unlike in *Equifax*, there is no "context" pleaded in the Amended Complaint that would transform corporate puffery into a violation of the federal securities laws. To the contrary, the statements identified in the Amended Complaint are quintessential, nonactionable puffery. *See* Opening Br. at 13-15 (collecting cases).[3]

---

[3] The cases cited by Lead Plaintiff at pages 13-15 of the Opposition Brief are inapposite, because those cases involved concrete statements of verifiable facts. *See*

Separately, many of the alleged false and misleading statements fall within the PSLRA's safe harbor, which insulates certain forward-looking statements from liability. A forward-looking statement falls within the safe harbor when it is (1) accompanied by meaningful cautionary language, (2) is immaterial, or (3) was not made with actual knowledge of falsity. *See Carvelli v. Ocwen Fin. Corp.,* 934 F.3d 1307, 1324-26 (11th Cir. 2019). Lead Plaintiff incorrectly argues that the safe harbor does not apply because the forward-looking statements made by FOXF "were made during earnings calls that took place over a nearly two-year period" and contained an "identical boilerplate warning." Opp. at 16.[4] However, FOXF's forward-looking statements were accompanied by multiple variations of meaningful cautionary

---

*Tung v. Dycom Indus., Inc.*, 454 F.Supp.3d 1244, 1257 (S.D.Fla. 2020) (statements not puffery because they were "concrete affirmations of verifiable actions" such as "establishing relationships with leading telecommunications providers"); *In re Urban Outfitters*, *Inc. Sec. Litig.*, 103 F.Supp.3d 635 (E.D.Pa. 2015) (involving "concrete information about the performance and business practice of a specific [brand]"); *In re Harman Int'l Indus., Inc. Sec. Litig.,* 791 F.3d 90, 109-110 (D.C. Cir. 2015) (same); *Neb. Inv. Council v. Fidelity Nat'l Info. Servs., Inc.*, 2024 WL 4349125, at *4 (S.D.Fla. 2024) (blatantly inaccurate statements about "cross-sales" were not puffery); *In re Sci.-Atlanta, Inc. Sec. Litig.*, 239 F.Supp.2d 1351 (N.D.Ga. 2002) (factual statements about company's successes were measurable and quantifiable, and thus not deemed puffery).

[4] Plaintiff cites a statement by Defendant Humphrey about "the current pace of industry demand" out of context to argue that it was not forward-looking. Opp. at 16 n.8. In context, however, that statement clearly was part of a forward-looking statement about FOXF's belief about the future, *see* AC ¶ 71. As such, the entire statement falls within the PSLRA's safe harbor. *See Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1329 (11th Cir. 2019).

language included in quarterly and annual investor earnings conference calls and in SEC filings.  *See, e.g.* Opening Br. at 13, n.3; *compare* FOXF's Q3-2021 Form 10-Q, at 27-28 *with* FOXF's 2022 Form 10-K, at 3-4, 12-32.   And there are no particularized allegations showing either that these forward-looking statements were false when made or that FOXF knew they were false.  Opp. at 15-16.  FOXF's forward-looking statements are protected.[5]

### B.      Lead Plaintiff fails to plead scienter with particularity.

The Amended Complaint also should be dismissed for the independent reason that it fails to plead particularized facts showing that Defendants made false or misleading statements with scienter—either (i) intent to deceive, manipulate or defraud or (ii) severe recklessness in not knowing the statement is false or misleading. *See Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1238 (11th Cir. 2008). The inference of scienter must "be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.*

### 1.      Lead Plaintiff's does not plead scienter "holistically".

While Lead Plaintiff argues that the Amended Complaint sufficiently pleads scienter "holistically", *see* Opp. at 17, each constituent element of a "holistic"

---

[5] Lead Plaintiff mistakenly suggests that Defendants' Opening Brief improperly addressed certain forward-looking statements and puffery on a categorical basis. Opp. at 13, n.6.  Lead Plaintiff, however, cites no authority to support his proposition. Rather, it is Lead Plaintiff who suffers from the unmet burden of particularity in his Amended Complaint.

approach still must be supported by particularized factual allegations that are lacking here: "[A]lthough factual allegations may be aggregated to infer scienter, the complaint must allege facts supporting a strong inference of scienter <u>for each defendant with respect to each violation</u>." *City of Pontiac Gen. Emps. Ret. Sys. v. Schweitzer-Mauduit Int'l, Inc.*, 806 F. Supp. 2d 1267, 1295 (N.D. Ga. 2011) (emphasis added). An amalgamation of non-particularized allegations, like those here, cannot be aggregated to plausibly plead scienter holistically. *Id.; see also Jackson Inv. Grp., LLC v. Thomas*, 325 F. Supp. 3d 1334, 1353 (N.D. Ga. 2017).

### 2. The Amended Complaint does not plead contemporaneous knowledge or facts.

Lead Plaintiff relies primarily on the conclusory, tangential allegations of five anonymous, low-level former employees of FOXF (including a "call center manager" and a local warehouse "cost accountant") to attempt to show scienter. While securities fraud plaintiffs may rely on information provided by confidential witnesses, "the weight to be afforded to allegations based on statements proffered by a confidential source depends on the particularity of the allegations." *Mizzaro v. Home Depot, Inc.,* 544 F.3d 1230, 1239 (11th Cir. 2008).

The allegations attributed to the "former employees" here do not show that any Defendant had contemporaneous knowledge that the alleged misstatements or omissions were materially false or misleading, which is necessary to plead scienter. As FOXF showed in its Opening Brief, four of the five "former employees" are not

alleged to have <u>ever</u> interacted or communicated with any named Defendants, and there are no particularized factual allegations to connect the allegations attributed to the former employees to the Defendants who made the alleged misstatements. Opening Br. at 16-18. And the fifth former employee is alleged to have had <u>one single</u> meeting with Defendant Humphrey, in January 2022; but the Amended Complaint does not in any way connect this meeting to any subsequent statement made by Defendant Humphrey, let alone show that Defendant Humphrey knew or should have known that any statement of his was false. Without such a connection, the allegations attributed to the former employees do not show scienter.[6] *See In re Coca-Cola Enterprises Inc. Sec. Litig.,* 510 F. Supp. 2d 1187, 1201 (N.D. Ga. 2007).

Lead Plaintiff has no good answer for his failure to connect the allegations attributed to the former employees with any Defendant's supposedly false statements. Instead, he illogically argues that the allegations of the former employees should be credited because "the FEs and other witnesses whose accounts underpin the falsity and scienter allegations in the AC worked directly on the matters they described." Opp. at 21 (internal quotation marks omitted). That the FEs "worked directly on the matters they described" says nothing about the only question that matters when gauging scienter—did the Defendants know, or were they reckless

---

[6] The alleged conclusory opinions of the COO of Specialized, one of FOXF's customers, cannot show scienter for similar reasons: There are no particularized allegations linking any of his opinions to anyone at FOXF. AC ¶¶ 26-28.

in not knowing, that their statements were false or misleading?  The allegations attributed to the former employees do not show actual knowledge or recklessness by any Defendant, and thus do not show scienter.  *See In re HomeBanc Corp. Sec. Litig.,* 706 F. Supp. 2d 1336, 1350 (N.D. Ga. 2010) (allegations of former employees did not show scienter because "of [p]laintiff's failure to plead sufficient facts to demonstrate that Defendants shared or endorsed [the former employees] views").

Apparently cognizant of the weakness of the "former employee" allegations, Lead Plaintiff argues that scienter can be inferred through Former Employee #1's allegations concerning (i) the "availability of weekly reports," Opp. at 20, and (ii) "monthly SO&P meetings." *Id.*  To show scienter based on reports or meetings, however, a plaintiff must "describe the actual contents of contemporaneous internal reports [or meetings] that contradict or cast doubt on defendants' public statements." *Mogensen v. Body Cent. Corp.*, 15 F. Supp. 3d 1191, 1220 (M.D. Fla. 2014).  Lead Plaintiff fails to meet that standard here, because the meetings are not described with any degree of particularity, and blanket assertions that these meetings and documents discussed "issues with slowing demand . . . and inventory build-up" are too generalized to establish scienter under the PSLRA. *See* AC ¶ 29; *Waterford Township Gen. Employees Retirement Sys. v. BankUnited Financial Corp.*, 2010 WL 1332574, at *14 (S.D. Fla. Mar. 30, 2010) (generalized allegation that weekly meetings discussed profit trends and their impact on public disclosures, without

- 11 -

providing the specific information discussed during the meetings, cannot support any inference of scienter).[7]  Moreover, Lead Plaintiff does not even allege that any Defendant was provided these reports or attended these meetings—which also defeats any inference of scienter.  *See, e.g.*, *Jackson*, 325 F. Supp. 3d at 1348 (existence of a document did not support scienter when the plaintiff did not allege "when or even whether [the defendants] ever saw it"); *Stein v. Aaron's, Inc.*, 2022 WL 4588410, at *7 (N.D. Ga. Sept. 29, 2022).

### 3.    Lead Plaintiff's "other factors" (Opp. at 22) do not show scienter, individually or holistically.

Lead Plaintiff argues that "other factors" show scienter, but they do not.

First, Lead Plaintiff does not even attempt to argue in the Opposition Brief how or why the allegation at Paragraph 156 of the Amended Complaint—that FOXF amended an existing credit facility in April 2022—shows scienter.  This argument is thus waived.  *Muhammad v. Verizon Wireless (VAW) LLC*, 2015 WL 13774014, at *9 (N.D. Ga. Dec. 22, 2015).

Second, the alleged stock sales by Defendants and other corporate insiders over the Class Period do not support a cogent inference of scienter, for the reasons

---

[7] In his opposition, Lead Plaintiff cites *Monroe Cnty. Emp. Ret. Sys. v. S. Co.*, 333 F. Supp. 3d 1315, 1323 (N.D. Ga. 2018), to argue that allegations of reports can show scienter.  But *Monroe* endorsed the legal principle that "vague references to reports" do not show scienter where a complaint does not plead "any detail of what these reports contained."  *Id.* at 1323 n.9.  Here, Plaintiff alleges no detail of these alleged reports.

shown in the Opening Brief (*i.e.*, the stock sales were not suspicious in timing or amount). Lead Plaintiff attempts to supplement the Amended Complaint by attaching as exhibits to his Opposition Brief SEC forms that show the dates of certain Defendants' trades, which are not pleaded in the Amended Complaint. Even if this supplementation is appropriate, Lead Plaintiff cannot plead an inference of scienter by simply providing the dates of trades; he must show that the dates of the trades were "suspicious," for example, because of their timing. *See, e.g.*, *Waterford Twp. Gen. Emps. Ret. Sys. v. CompuCredit Corp.*, 2009 WL 4730315, at *8 (N.D. Ga. Dec. 4, 2009). Lead Plaintiff has not done so here.

Third, and finally, Lead Plaintiff tepidly argues that the "core operations" doctrine supports an inference of scienter. Opp. at 22-23. But Lead Plaintiff does not cite to any allegations in the Amended Complaint that would actually support applying the "core operations" doctrine to support an inference of scienter here. Indeed, the more compelling inference that would be drawn by applying the "core operations" doctrine to the Amended Complaint is that the Defendants' disclosures and guidance regarding demand were correct, given the company's strong ongoing financial performance.

### 4. The more compelling inference is nonfraudulent.

Finally, at footnote 9 of his Opposition Brief, Lead Plaintiff argues that Defendants "offer no competing inference" to be drawn from the Amended

- 13 -

Complaint. This is simply not true. As Defendants stated at pages 22-23 of their Opening Brief:

> The more compelling inference to draw from the Amended Complaint is a nonfraudulent one: Like many other American corporations over the last several years, FOXF saw demand and business increase rapidly with the onset of the pandemic, which caused its stock price to go up. As demand and business gradually slowed, the stock price went down. Every step of the way, FOXF made accurate and comprehensive disclosures to the market, belying any inference of fraud.

Nothing in the Amended Complaint or the Opposition Brief undercuts this inference, and this Court can and should join others in "rejecting this kind of hindsight pleading in the wake of the pandemic." *See* Opening Br. at 23.

### C.     Lead Plaintiff fails to plausibly plead loss causation.

Finally, Lead Plaintiff has failed to sufficiently plead the separate and independent element of "loss causation"—*i.e.*, "facts demonstrating that the Defendants' misrepresentations caused the losses for which plaintiff seeks to recover." Opp. at 24 (quoting *Equifax*, 357 F. Supp. 3d at 1247). As discussed in FOXF's Opening Brief, FOXF's stock price dropped from approximately $82 to $60 following disclosures on November 2, 2023. Opening Br. at 24. Lead Plaintiff alleges that this drop was caused by the announcement of a decrease in net sales, but Lead Plaintiff simply ignores two other announcements included in the very disclosure on November 2, 2023, that he has put at issue: (1) FOXF's acquisition of a company that manufactures baseball bats and diamond-sports products, which was

- 14 -

immediately questioned by analysts on FOXF's November 2, 2023 analyst call; and

(2) guidance on sales and production caused by a UAW strike. *Id.*

While Lead Plaintiff argues that he is "not required to disaggregate other potential causes for the drop in FF's stock price . . .", Opp. at 24, consistent with this Court's holding in *Waterford Township General Employees Retirement Systems v. Suntrust Banks, Inc.*, Lead Plaintiff must, at a minimum, "allege facts sufficient to support an inference that it was defendant's fraud—rather than other salient factors—that proximately caused a drop in share price. . . . [W]hen multiple factors are at play, the plaintiff should allege facts sufficient to apportion the losses between the factors . . . ." 2010 WL 3368922, at *4 (N.D. Ga. Aug. 19, 2010). Lead Plaintiff has failed to allege such facts, and thus has failed to adequately plead loss causation.[8]

## II.   CONCLUSION

For these reasons, and for those stated more fully in FOXF's opening memorandum of law, Defendants respectfully request that the Amended Complaint be dismissed, in its entirety and with prejudice.

---

[8] Lead Plaintiff argues that he is only obliged to address other salient causal factors if those factors are external to the underlying company (like a market-wide downturn). Opp. at 24-25. But, while certain of the cases cited by Lead Plaintiff (including *Waterford*) involve external factors, none holds that "salient factors" must be external—and "internal" factors are particularly salient here, given that Lead Plaintiff has put the November 2, 2023 disclosures at issue.

Dated: January 13, 2025                Respectfully submitted,

                                       */s/ Joseph C. Weinstein*
                                       Squire Patton Boggs (US) LLP
                                       Joseph C. Weinstein (admitted *pro hac vice*)
                                       Sean L. McGrane (admitted *pro hac vice*)
                                       Anna N. Huttner (admitted *pro hac vice*)
                                       1000 Key Tower, 127 Public Square
                                       Cleveland, OH 44114
                                       (216)-479-8500
                                       joe.weinstein@squirepb.com
                                       sean.mcgrane@squirepb.com
                                       anna.huttner@squirepb.com

                                       Petrina Hall McDaniel
                                       1230 Peachtree Street NE, Ste. 2200
                                       Atlanta, GA 30309
                                       (678) 272 3207
                                       petrina.mcdaniel@squirepb.com

                                       *Counsel for Defendants*

## LOCAL RULE 5.1 CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Local Rules 5.1 and 7.1D, that the foregoing Memorandum in Support of Motion to Dismiss has been prepared using Times New Roman, 14-point font.

Dated: January 13, 2025.                    */s/ Joseph C. Weinstein*
                                            Joseph C. Weinstein

                                            *An Attorney for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Memorandum in Support of Motion to Dismiss was served on January 13, 2025, by filing it using the Court's CM/ECF system, which will send electronic notification of such filing to all counsel of record.

*/s/ Joseph C. Weinstein*
Joseph C. Weinstein

*An Attorney for Defendants*