IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RYAN MARSELIS, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>FOX FACTORY HOLDING CORP., et al.,<br><br>    Defendants. | CIVIL ACTION FILE<br>NO. 1:24-CV-00747-TWT |

**OPINION AND ORDER**

This is a securities fraud case. It is before the Court on the Defendants' Motion to Dismiss [Doc. 46]. For the reasons set forth below, the Defendants' Motion to Dismiss [Doc. 46] is GRANTED.

**I.   Background[1]**

This case involves allegations that the Defendants fraudulently misled investors as to Fox Factory Holding Corp. ("Fox Factory")'s economic outlook. Defendant Fox Factory "designs, manufactures, and markets performance-defining products and systems used primarily on bikes, side-by-sides, on-road vehicles with and without off-road capabilities, off-road vehicles and trucks, ATVs, snowmobiles, and specialty vehicles and applications." (Am. Compl. ¶ 13). For most relevant times, Fox Factory "was

---

[1] The Court accepts the facts as alleged in the Amended Complaint as true for purposes of the present Motion to Dismiss. *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

divided into two primary groups: Specialty Sports Group ("SSG") (f/k/a Fox's "Bike Division"), which designs and manufactures high-performance suspension products for bikes, and Fox's Powered Vehicle Group ("PVG"), which designs and manufactures suspension components for off-road and specialty vehicles." (*Id.* ¶ 2). Defendant Michael C. Dennison has been for all relevant times the CEO and Director of Fox Factory. (*Id.* ¶ 14). Defendant Scott R. Humphrey served as CFO of Fox Factory from August 4, 2020, until April 5, 2023. (*Id.* ¶ 17). Defendant Maggie E. Torres was then Interim CFO from April 3, 2023, until June 12, 2023, at which point she became Director of Accounting Projects. (*Id.* ¶ 16). Defendant Dennis C. Schemm was appointed CFO on June 12, 2023, and remains in that position. (*Id.* ¶ 15). Named Plaintiff Ryan Marselis bought common stock in Fox Factory and seeks to represent a class of persons and entities that purchased Fox Factory common stock between May 6, 2021, and November 2, 2023 ("Class Period"), who were damaged by the Defendants' alleged fraud. (*Id.* ¶¶ 12, 168).

When the COVID-19-related lockdowns occurred in 2020, demand for bicycles exploded as people spent more time outdoors. (*Id.* ¶ 25). Consequently, original equipment manufacturers ("OEMs") began ordering significantly more product from component part manufacturers, such as Fox Factory. (*Id.* ¶ 26). "However, consumer demand for bikes quickly began to wane during 2021 and by October, demand for bicycles had fallen back to, or below, pre-pandemic

2

levels where it stayed for the remainder of the Class Period." (*Id.* ¶ 4).

Despite that, the Named Plaintiff alleges that the Defendants made numerous misleading statements during the Class Period about the demand for Fox Factory's products. For example, on May 6, 2021, Fox Factory announced its financial results for the first quarter of fiscal year 2021, which showed an increase of 52.2% in reported sales over the same quarter in 2020. (*Id.* ¶ 59). On the same day, Defendants Fox Factory, Humphrey, and Dennison stated, *inter alia*, that there was "unprecedented demand growth," that the SSG sales increase was "primarily driven by increased demand in both the . . . [OEM] and aftermarket channels," that "[t]he tectonic shift created in the consumer demand by the pandemic seems more than just a transitory bubble," and that "[m]ost of our distribution centers are empty[,] [s]o what we build, we sell all the way through the channel to the end consumer." (*Id.* ¶¶ 60-64). These Defendants made similar comments in press releases, Form 10-Qs, and calls with investors and analysts for the next several quarters after reporting increases in sales. (*Id.* ¶¶ 68-72, 77-85, 88-96, 99-103, 106-110, 113-119).

Starting with the fourth quarter of fiscal year 2022, Fox Factory reported a decline in sales in the SSG group compared to the same quarter in the previous year. (*Id.* ¶ 122). Defendant Humphrey primarily attributed this decline "to a return to seasonality in the bike business." (*Id.* ¶ 126). Likewise, Defendant Dennison asserted that he "believe[d] end customer demand, even

3

though seasonality has finally returned, continue[d] to be generally positive" and that "demand was more positive than people give it credit for." (*Id.* ¶¶ 126-27). The first quarter of fiscal year 2023 showed a bigger decline in sales in the SSG group, which a press release said was driven by a "return to seasonality and the impacts of higher levels of inventory across various channels." (*Id.* ¶ 131). The trend continued when the SSG group's sales declined by an even larger amount in the second quarter of fiscal year 2023.[2] (*Id.* ¶ 138). Defendant Schemm stated that this decline was "primarily due to the higher level of channel inventory." (*Id.* ¶ 142). Defendant Dennison asserted that demand was "strong," "hasn't been the problem," and was "up significantly year-on-year over 100%." (*Id.*). Finally, on November 2, 2023, Fox Factory released the numbers from the third quarter of fiscal year 2023, which showed another decline that was bigger than the previous ones. (*Id.* ¶ 145). Defendant Dennison attributed this decline to "slower buying patterns." (*Id.* ¶ 146). This news caused the price of Fox Factory's common stock to decline 37.34%. (*Id.* ¶ 148).

The Named Plaintiff asserts that—up until the announcement on November 2, 2023—the Defendants misled investors about the demand for Fox

---

[2] At this point in time, Fox Factory split the PVG group "into the Powered Vehicles Group and the Aftermarket Applications Group to be more aligned with the Company's end customers and drive additional focus on product development." (Am. Compl. ¶ 138). Both of those groups reported sales increases. (*Id.*).

4

Factory's products. (*Id.* ¶¶ 65, 73, 76, 86, 97, 104, 111, 120, 128, 136, 143). He consequently asserts claims for violating Section 10(b) of the Exchange Act and SEC Rule 10b-5 (Count I) as well as violating Section 20(a) of the Exchange Act (Count II). (*Id.* ¶¶ 174-87). The Defendants now move to dismiss both counts.

## II.     Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only

give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

A private securities plaintiff must go further and satisfy a heightened "triple-layered pleading standard." *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1317 (11th Cir. 2019). "To survive a motion to dismiss, a securities-fraud claim brought under Rule 10b–5 must satisfy not only the run-of-the-mill federal notice-pleading requirements, but also the heightened pleading standards found in Federal Rule of Civil Procedure 9(b) and the special fraud pleading requirements imposed by the Private Securities Litigation Reform Act of 1995." *Id.* at 1317-18 (citations omitted). Rule 9(b) "requires a plaintiff to allege specifically (1) which statements or omissions were made in which documents or oral representations; (2) when, where, and by whom the statements were made (or, in the case of omissions, not made); (3) the content of the statements or omissions and how they were misleading; and (4) what the defendant received as a result of the fraud." *Id.* at 1318 (citation omitted). Meanwhile,

> [t]he PSLRA—with some overlap—requires a complaint to "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." It also requires, "with respect to each act or omission alleged," that a complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." The required state of mind, [the Eleventh Circuit has] held, is an intent to defraud or severe recklessness on the part of

6

> the defendant. And a "strong inference" is one that is cogent and at least as compelling as any opposing inference one could draw from the facts alleged. Although scienter may be inferred from an aggregate of factual allegations, it must be alleged with respect to each alleged violation of the statute.

*Id.* (quotation marks and citations omitted).

### III.   Discussion

The Named Plaintiff asserts two counts. First, he alleges that the Defendants violated Section 10(b) of the Exchange Act and SEC Rule 10b-5. Second, he alleges a violation of Section 20(a) of the Exchange Act. The Court finds that the Named Plaintiff has not stated a claim for either count.

### A. Section 10(b) and Rule 10b-5

"The basic elements of a 10b–5 claim are: (1) a material misrepresentation or omission; (2) made with scienter; (3) in connection with the purchase or sale of a security; (4) reliance on the misstatement or omission; (5) economic loss; and (6) a causal connection between the material misrepresentation or omission and the loss, known as 'loss causation.'" *Patel v. Patel*, 761 F. Supp. 2d 1375, 1380 (N.D. Ga. 2011) (citation omitted). The Defendants argue that the Named Plaintiff fails to plausibly plead the first, second, and sixth elements. The Court finds that dismissal is appropriate.

As an initial matter, the Defendants argue that the Named Plaintiff has not pled with sufficient particularity. Specifically, the Defendants challenge the fact that:

7

> the Amended Complaint identifies a number of statements but does not actually identify which are alleged to be false or misleading. Then, in the last two paragraphs within each group [of statements organized by quarter], Lead Plaintiff lists three to four generic reasons as to why the preceding statements as a whole were purportedly false and misleading. The same conclusory list is then copied and pasted throughout the Amended Complaint.

(Defs.' Br. in Supp. of Mot. to Dismiss, at 7-8 (citations omitted)).

Several courts have found such a pleading warrants dismissal under the PSLRA. *See, e.g.*, *Barron v. Lampley*, 2016 WL 5334472, at *10-11 (N.D. Ga. Jan. 25, 2016); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1073-75 (N.D. Cal. 2001); *Gera v. Palihapitiya*, 2024 WL 3818602, at *11-12 (D. Ariz. Aug. 14, 2024). The Named Plaintiff does not contest that he employs this method but instead points to another case in which the court declined to dismiss the complaint for this practice. (Pl.'s Br. in Opp'n to Mot. to Dismiss, at 17).

In *City of Pompano Beach Gen. Emp. Ret. Sys. v. Synovus Fin. Corp.*, 2011 WL 13130185, at *7 (N.D. Ga. May 19, 2011), the court stated that the plaintiffs failed to "directly link an alleged false statement with the facts Plaintiffs contend demonstrate that the statement is false" but nevertheless permitted it to proceed because the Plaintiffs "attempt[ed] to plead at the conclusion of each time period how they believe the statements made by Defendants were misleading." *Id.* For example, one of the defendants allegedly stated, "I can tell you that area is, believe it or not, doing very well. Their, you

8

know, sales are on target, their occupancies at the resorts are high. And we have really not seen anything that gives us any lack of confidence there." *Id.* at *8. Following that statement, the Plaintiffs alleged,

> (a) Synovus had far greater exposure to losses because of these "insider loans;"
>
> (b) Synovus had far greater exposure to losses because of the loans to Sea Island;
>
> (c) Synovus's loans to Sea Island exceeded its borrower policy limit and Synovus did not disclose this fact to investors;
>
> (d) Sea Island was not "doing very well;"
>
> (e) Sea Island's sales were not "on target;"
>
> (f) occupancies in Sea Island's resorts were not "high;"
>
> (g) Synovus had no reasonable basis to claim it had confidence in Sea Island's ability to repay the loan;
>
> (h) Sea Island was "past due" on its payments to Synovus;
>
> (i) Sea Island required an immediate restructuring of the loan; and
>
> (j) the effort to reassure investors was part of a scheme to inflate the stock price.

*Id.* at *9.

This is distinguishable from the present case. The Named Plaintiff here does not even attempt to explain why specific statements are misleading. For instance, in the fourth quarter of fiscal year 2022, the Named Plaintiff points to various statements, including that: (1) the decline in SSG sales was "driven

9

by return to seasonality," (2) the increase in PVG sales was "primarily due to increased demand in the [OEM] channel and strong performance in our upfitting product lines," (3) the growth in inventory was caused by "natural growth to meet anticipated demand, receipt of long lead time items that had been delayed, and higher levels of safety stock to migrate supply chain uncertainty," (4) Fox Factory had done "substantially better than most of [its] industry peers," and (5) Fox Factory was "still very confident in top line . . . $2 billion [in revenue] by 2025." (Am. Compl. ¶¶ 123-27). Following those statements, the Named Plaintiff alleges:

> The statements referenced above in ¶¶ 123-127 were materially false and misleading because:
>
> a) Fox failed to disclose that end-user demand for bikes was declining significantly; that its SSG customers already had too much inventory and would not be placing new orders because of the decline in end-user demand; that, as a result of the decline in demand, OEMs were canceling orders and/or asking Fox to delay the shipment of existing orders; that aftermarket dealers and distributors were canceling orders; and that SSG's inventory was increasing as a result;
>
> b) Fox failed to disclose that demand for PVG products had declined, including due to the loss of OEM customers Jeep and Polaris; and
>
> c) Fox failed to disclose that PVG's inventory was increasing as a result of slowing demand and PVG's inventory was bloated with obsolete products that should have been written off.

(*Id.* ¶ 128).

These three statements do nothing to tell why each of the above-referenced specific statements is misleading. Was it not true that Fox Factory did "substantially better than most of [its] industry peers?" (*See* Am. Compl. ¶ 126). Or was it a factually correct statement that the Named Plaintiff alleges needed more context? If the latter, how do the alleged omissions render the statement misleading? The Amended Complaint does not say. The Court is left to speculate based on three reasons that are repeated almost verbatim for numerous statements spanning across several quarters. (*Id.* ¶¶ 104, 111, 120, 136, 143).[3] For that reason, the Court finds this case is more like *Cambridge Ret. Sys. v. MEDNAX, Inc.*, 2019 WL 4893029, at *20 (S.D. Fla. Oct. 3, 2019), than *Pompano*. In *Cambridge Ret. Sys.*, the court stated:

> Here, instead of pleading the required "specific facts" showing that each particular statement was false at the time it was made, the First Amended Complaint simply repeats the same litany of boilerplate allegations—seventeen times—after each of Defendants' statements, asserting that the all [sic] statements made by Defendants were false because they omitted the material facts that MEDNAX's strategy was not sustainable because market trends were beginning to emerge that negatively affected the profitability and valuations of anesthesiology practices and these adverse trends, coupled with alleged dissatisfaction of anesthesiologists in already-acquired practices, made it more difficult for MEDNAX to close on anesthesiology deals. These boilerplate allegations—which Plaintiff applies uniformly to all positive statements made by Defendants for an approximately seventeen (17) month time period do not even come close to meeting the pleading standard for fraud Rule 9(b) and the

---

[3] Moreover, other quarters had three or four general reasons that were repeated multiple times. (Am. Compl. ¶¶ 65, 73, 86, 97). Those reasons largely overlap the three reasons reproduced above.

11

PSLRA.

*Id.* The Named Plaintiff offers no citation to *Cambridge Ret. Sys.*, much less any meaningful distinction between this statement and the present case. (Pl.'s Br. in Opp'n to Mot. to Dismiss, at 17).

The Named Plaintiff's response boils down to his belief that he does not need to "repeat *verbatim* all of the specific facts demonstrating falsity after each individual alleged misstatement." (*Id.*). This is not a strong argument. For starters, to the extent that the Named Plaintiff is arguing that he should be able to plead falsity generally, that flies straight into the face of Rule 9(b) and the PSLRA. *See Carvelli*, 934 F.3d at 1318. Furthermore, the facts required to demonstrate the falsity of each alleged misstatement will be different. By way of illustration, the facts that would mislead a reasonable investor about the truth of the statement that Fox Factory is doing better than its competitors are different than the facts that would mislead a reasonable investor about the cause of increased sales in the PVG products. A well-pleaded complaint will reflect that. Overall, the Court finds that the Named Plaintiff has not satisfied the triple-layered pleading standard in this case. The Court will therefore dismiss Count I of the Amended Complaint.

### B. Section 20(a)

Because the Court finds that the Named Plaintiff has not stated a claim under Section 10(b) and Rule 10b-5, the Named Plaintiff's claim under Section

20(a) also fails. *See In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1276 (11th Cir. 2016) (dismissing claim under Section 20(a) for failure to allege a "primary violation"); *Waterford Twp. Gen. Emp. Ret. Sys. v. Suntrust Banks, Inc.*, 2010 WL 3368922, at*6 (N.D. Ga. Aug. 19, 2010) ("Because the Plaintiff has not adequately pled false representations or scienter or loss causation, the Court need not decide whether the Plaintiff has adequately pled the remaining elements of a § 10(b) claim or the elements of a § 20(a) claim, which depends on the existence of an underlying § 10(b) claim.").

### C. Leave to Amend

The Named Plaintiff requests leave to amend in the event that the Court grants the Motion to Dismiss. (Pl.'s Br. in Opp'n to Mot. to Dismiss, at 25). Rule 15(a)(2) provides that a court should "freely" give leave to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). This decision is discretionary, but the Eleventh Circuit has explained that "district courts should generally exercise their discretion in favor of allowing amendments to reach the merits of a dispute." *Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC*, 7 F.4th 989, 1000 (11th Cir. 2021). "Leave to amend should be 'freely given when justice so requires' unless there is an 'apparent or declared reason' to deny it such as 'undue prejudice to the opposing party.'" *Id.* (citations omitted). The Court does not find that the Defendants' arguments for denying leave to amend meet this standard. (Defs.'

13

Br. in Supp. of Mot. to Dismiss, at 25). The mere fact that the Named Plaintiff already amended his Complaint is not sufficient to warrant a dismissal with prejudice. *See, e.g.*, *Acosta v. Smart Ala., LLC*, 2023 WL 2447597, at *5 (N.D. Ga. Mar. 10, 2023) (granting leave to file a second amended complaint). Furthermore, amendment is not so "clearly futile" as to justify denying the Named Plaintiff's request for leave to amend. *Farr v. CTG Hosp. Grp., LLC*, 2024 WL 1095740, at *2 (N.D. Ga. Mar. 13, 2024) (citation omitted). In the only case to which the Defendants cite—*Arthur v. JP Morgan Chase Bank, NA*, 569 F. App'x 669, 686 (11th Cir. 2014)—the plaintiff had already amended their complaint on three previous occasions and on one of those occasions stated they had "significant additional facts." When that was not sufficient, the Eleventh Circuit granted dismissal with prejudice. Here, the Named Plaintiff amended only once and made no such representation. The Court will therefore permit the Named Plaintiff to file a Second Amended Complaint within 30 days of the date of this Order.

## IV.   Conclusion

For the foregoing reasons, the Defendants' Motion to Dismiss [Doc. 46] is GRANTED. The Named Plaintiff may file a Second Amended Complaint within thirty (30) days of the date of this Order. If he fails to do so, this dismissal shall be with prejudice.

SO ORDERED, this ____13th____ day of March, 2025.

14

*[signature]*

THOMAS W. THRASH, JR.
United States District Judge