# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

RYAN MARSELIS, Individually and on
Behalf of All Others Similarly Situated,

       Plaintiff,

v.

FOX FACTORY HOLDING CORP., et al.,

       Defendants.

Civil Action No. 1:24-cv-00747-TWT

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS SECOND AMENDED COMPLAINT

SQUIRE PATTON BOGGS (US) LLP

Joseph C. Weinstein (admitted *pro hac vice*)
joe.weinstein@squirepb.com
Sean L. McGrane (admitted *pro hac vice*)
sean.mcgrane@squirepb.com
Anna N. Huttner (admitted *pro hac vice*)
anna.huttner@squirepb.com
1000 Key Tower
127 Public Square
Cleveland, OH 44022
(216) 479 8500

Petrina Hall McDaniel
1230 Peachtree Street NE, Ste. 2200
Atlanta, GA 30309
(678) 272 3207
petrina.mcdaniel@squirepb.com

*Counsel for Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... ii

PRELIMINARY STATEMENT ..........................................................................1

I.    LAW AND ARGUMENT...........................................................................1

A.    Lead Plaintiff Fails To Cure The Deficiencies Identified By This Court In Its Order Dismissing The First Amended Complaint. ...................................................................................1

B.    Plaintiff Fails To Adequately Plead Falsity. ......................................3

1.    Statements regarding demand were not materially false or misleading. .................................................................3

2.    Plaintiff fails to plead particularized factual allegations to support his "inventory" theory.......................................5

3.    Statements regarding projected revenues fall within the safe harbor...................................................................6

4.    Defendants' risk disclosures were not false or misleading. .................................................................7

5.    Many of Defendants' statements constitute inactionable puffery. .................................................................8

C.    Lead Plaintiff Separately Fails To Plead Scienter With Particularity. ....................................................................9

1.    Lead Plaintiff does not plead scienter "holistically." ...............10

2.    The SAC does not plead contemporaneous knowledge or facts. ...................................................................10

3.    Standard management activities do not "admit" scienter.........12

4.    Lead Plaintiff fails to plead any financial motive.....................13

5.    Lead Plaintiff offers no counter to FOXF's non-fraudulent inference. .................................................14

D.    Lead Plaintiff Fails To Plead Loss Causation. ..................................15

CONCLUSION ................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Born v. Quad/Graphics, Inc.*,
  521 F. Supp. 3d 469 (S.D.N.Y. 2021) ...............................................................1

*Carvelli v. Ocwen Fin. Corp.*,
  934 F.3d 1307 (11th Cir. 2019) .........................................................................7

*City of Pontiac Gen. Emps. Ret. Sys. v. Schweitzer-Mauduit Int'l, Inc.*,
  806 F. Supp. 2d 1267 (N.D. Ga. 2011).........................................................3, 10

*City of Southfield Gen. Employees' Ret. Sys. v. Nat'l Vision Holdings, Inc.*,
  2024 WL 1376016 (N.D. Ga. Mar. 30, 2024) ...................................................8

*In re Coca-Cola Enterprises Inc. Sec. Litig.*,
  510 F. Supp. 2d 1187 (N.D. Ga. 2007).............................................................11

*In re Equifax Inc. Sec. Litig.*,
  357 F. Supp. 3d 1189 (N.D. Ga. 2019)..............................................................9

*In re Flowers Foods, Inc. Sec. Litig.*,
  2018 WL 1558558 (M.D. Ga. Mar. 23, 2018).....................................................8

*In re HomeBanc Corp. Sec. Litig.*,
  706 F. Supp. 2d 1336 (N.D. Ga. 2010).............................................................10

*Jackson Inv. Grp., LLC v. Thomas*,
  325 F. Supp. 3d 1334 (N.D. Ga. 2017).........................................................10, 12

*In re Midway Games, Inc. Sec. Litig.*,
  332 F. Supp. 2d 1152 (N.D. Ill. 2004)................................................................7

*Mizzaro v. Home Depot, Inc.*,
  544 F.3d 1230 (11th Cir. 2008) ...........................................................10, 13, 15

*Mogensen v. Body Cent. Corp.*,
  15 F. Supp. 3d 1191 (M.D. Fal. 2014).........................................................12, 13

*Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*,
   720 F. Supp. 2d 517 (D.N.J. 2010)................................................................6

*NECA-IBEW Health & Welfare Fund v. Pitney Bowes Inc.*,
   2013 WL 1188050 (D. Conn. Mar. 23, 2013) .............................................6

*Oklahoma Firefighters Pension & Ret. Sys. v. Xerox Corp.*,
   300 F. Supp. 3d 551 (S.D.N.Y. 2018), *aff'd sub nom. Arkansas*
   *Pub. Emps. Ret. Sys. v. Xerox Corp.*, 771 F. App'x 51 (2d Cir.
   2019). .............................................................................................................7

*Plymouth Cnty. Ret. Sys. v. Carter's Inc.*,
   2011 WL 13124501 (N.D. Ga. Mar. 17, 2011) .....................................13, 14

*Public Employees' Retirement System of Mississippi v. Mohawk*
   *Industries, Inc.*,
   564 F. Supp. 3d 1272 (N.D. Ga. 2021)........................................................4

*Ret. Sys. v. Stryker Corp.*,
   2011 WL 2650717 (W.D. Mich. July 6, 2011).............................................3

*S.E.C. v. Merch. Cap., LLC*,
   483 F.3d 747 (11th Cir. 2007) .....................................................................8

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
   160 F. Supp. 2d 1059 (N.D. Cal. 2001).......................................................2

*In re Theragenics Corp. Sec. Litig.*,
   137 F. Supp. 2d 1339 (N.D. Ga. 2001).....................................................4, 5

*Tolbert v. Queens Coll.*,
   242 F.3d 58 (2d Cir. 2001) ..........................................................................7

*In re Tupperware Brands Corp. Sec. Litig.*,
   2023 WL 5091802 (11th Cir. Aug. 8, 2023) ................................................6

*United Ass'n Nat'l Pension Fund v. Carvana Co.*,
   2024 WL 863709 (D. Ariz. Feb. 29, 2024) ..................................................2

*Waterford Twp. Gen. Emps. Ret. Sys. v. CompuCredit Corp.*,
   2009 WL 4730315 (N.D. Ga. Dec. 4, 2009) (Thrash, J.) ...................12, 14, 15

**Statutes**

15 U.S.C. § 78u–5(c)(1)........................................................................................7

15 U.S.C. § 78u-4(b)(1)(B)...................................................................................1

## PRELIMINARY STATEMENT

Plaintiff's claims are governed by the heightened pleading requirements of the PSLRA. The Second Amended Complaint (the "SAC") fails to state the particularized facts that the PSLRA requires to adequately allege both falsity and scienter. It also fails to plausibly plead loss causation. Accordingly, for multiple independent reasons, the SAC should be dismissed in its entirety and with prejudice.

## I. LAW AND ARGUMENT

### A. Lead Plaintiff Fails To Cure The Deficiencies Identified By This Court In Its Order Dismissing The First Amended Complaint.

This Court dismissed the First Amended Complaint (the "FAC") on March 13, 2025. The Court correctly found that the FAC did not meet the rigorous "triple-layered pleading standard" for pleading falsity because it failed to specify why each alleged misstatement was false or misleading, as required under the PSLRA. *See* March 13, 2025 Opinion and Order ("Op.") (ECF No. 49) at 6-7; *see also* 15 U.S.C. § 78u-4(b)(1)(B) (complaint must "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading").

The SAC does not cure this deficiency. *See* Defendants' Opening Brief ("Opening Br.") at 6-7. Instead, Plaintiff briefly argues that he cured the defect primarily by "separate[ing] the various statements by topic." Plaintiff's Opposition Brief ("Opp. Br.") at 6. But courts have found that this sort of approach to pleading falsity fails under the PSLRA. *See, e.g., Born v. Quad/Graphics, Inc.,* 521 F. Supp.

3d 469, 479–80 (S.D.N.Y. 2021) (dismissing securities fraud claims where plaintiffs "bucketed" alleged misstatements into broad groups, leaving the court "to sort out the alleged misrepresentations and then match them with the corresponding adverse facts"); *see also In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1073 (N.D. Cal. 2001) (dismissing SAC with prejudice where alleged misstatements not linked to facts showing falsity); *United Ass'n Nat'l Pension Fund v. Carvana Co.*, 2024 WL 863709, at *9 (D. Ariz. Feb. 29, 2024).

Moreover, Plaintiff's argument that he has "specifically stated" why each statement is false and misleading is belied by the allegations of the SAC itself. For example, at paragraph 101 of the SAC, Plaintiff alleges that a statement made on May 6, 2021, relating to inventory levels was false or misleading, without setting forth particularized facts as to why. Instead, at Paragraph 106, Plaintiff lumps the statement together with all the additional "statements referenced above in ¶¶ 101-105" and alleges that they were collectively false and misleading because, among other things, "by early 2022, there was already a large increase in aftermarket inventory causing literally overflowing warehouses in the United States." SAC ¶ 106. But how could the statement relating to inventory in paragraph 101, made on May 6, 2021, be false based on a "large increase in aftermarket inventory" that had occurred by early 2022, at least seven months after the statement was made? Plaintiff's pleading failure is palpable.

Similarly, SAC paragraph 119 includes eight bullet points, each of which includes an alleged false or misleading statement relating to the PVG business from the first quarter of 2022 through the first quarter of 2023, but does not include particularized facts explaining why each statement is false or misleading. Instead, in paragraph 120, Plaintiff alleges that all of the statements in the preceding eight bullet points were false for the same reasons—including, for example, declining demand in PVG. But was demand in the first quarter of 2022 the same as in the first quarter of 2023, such that statements made one-year apart were false for the same exact reasons? The SAC does not answer this question, which is precisely the same defect that this Court identified when dismissing the FAC: "[T]he facts required to demonstrate the falsity of each alleged misstatement will be different . . . . A well-pleaded complaint will reflect that."[1] Op. at 12. In sum, the cosmetic changes to the SAC do not cure the substantive deficiencies that resulted in the dismissal of the FAC.

## B. Lead Plaintiff Fails To Adequately Plead Falsity.

### 1. Statements regarding demand were not materially false or misleading.

Plaintiff mistakenly argues that Defendants' statements with respect to

---

[1] Plaintiff incorrectly relies on *City of Pontiac Gen. Emps.' Ret. Sys. v. Stryker Corp.*, 2011 WL 2650717 (W.D. Mich. July 6, 2011), to argue that a common set of reasons can support the falsity of multiple statements. *Stryker* involved contemporaneous regulatory findings—an FDA form and warning letter—that directly contradicted the defendants' statements, showing falsity with particularity. *Id.* at *6-7. Here, the SAC contains no such allegations, let alone for every alleged misstatement.

demand and revenue growth were false or misleading because "they gave the false impression that the company was growing 'organically' when, in fact, the demand 'growth' had ended and the increased revenues were the result of filling old orders . . . ." Opp. Br. at 9. Not so.

Instead, the statements cited in the SAC clearly show FOXF disclosed to the market throughout the Class Period that revenue growth was being driven, in part, by the fulfillment of backlogged orders. *See, e.g.,* SAC ¶ 119 ("Defendant Dennison stated that Fox 'anticipated the PVG Group will continuing to grow at the current rates given the significant backlogs in our auto OE and Power Sport business, along with strong demand in our upfitting product lines.'"); *id.* ¶ 89 (FOXF disclosing "record backlog"). Clearly, then, FOXF was not misleading the market about ongoing fulfillment of backlogged orders. Plaintiff's attempt to show falsity through an artificial distinction between "organic" and "inorganic" growth is not supported by the SAC, statements made by FOXF during the Class Period, or any case law.[2]

---

[2] The cases Plaintiff cites are inapposite. In *Public Employees' Retirement System of Mississippi v. Mohawk Industries, Inc.*, plaintiff alleged particularized allegations of deliberate overproduction to artificially inflate margins—conduct fundamentally different from anything alleged here. 564 F. Supp. 3d 1272, 1292 (N.D. Ga. 2021). Likewise, *In re Theragenics Corp. Sec. Litig.*, does not support Plaintiff's artificial distinction between "organic" and "non-organic" growth. 137 F. Supp. 2d 1339, 1349 (N.D. Ga. 2001). In *Theragenics*, the plaintiff pleaded particularized factual allegations that defendants failed to disclose a supply shortage at a competitor, rendering their statements false and misleading. *Id.*

Plaintiff also argues that FOXF gave a "false impression" as to demand because it was "pulling forward sales to increase revenues." Opp. Br. at 8. The sole source for this allegation of "pulling forward" revenues, however, is generic "discussions" attributed to two low-level former employees—both of whom had left FOXF by April 2022—nearly two years before the Class Period ended. SAC ¶¶ 62, 65. Moreover, the SAC does not define the time period that the alleged practice occurred, whether the alleged practice extended beyond the Gainesville facility at which the two low-level employees worked, or if the alleged amounts were even material. These vague allegations do not sufficiently show falsity.

### 2. Lead Plaintiff fails to plead particularized factual allegations to support his "inventory" theory.

Although Plaintiff argues that Defendants failed to disclose the "true" reason for increasing inventory levels during the Class Period—"declining demand and customers delaying and cancelling orders," Opp. Br. at 11, he never squarely addresses the fact that the SAC identifies only one specific customer cancellation in the SSG division across the nearly three-year Class Period—a cancellation that occurred "in the first half of 2021" and was worth "millions of dollars"—an immaterial amount given that Fox Factory had nearly $1.3 billion in consolidated revenues just in 2021 and much more during the alleged Class Period. *See* Opening Br. at 8-10. Plaintiff does not dispute that this is the only cancellation or delayed order within SSG that is pleaded with any specificity; the remaining allegations of

SSG cancellations or delayed orders are vague and conclusory. *Id.* This lone allegation, from the very start of the Class Period, cannot support Plaintiff's sweeping theory that Defendants hid SSG customer cancellations and delays from the market for the next three years.

The same is true for the PVG division, where Plaintiff mentions two customer cancellations in 2022, Jeep and Polaris, but pleads no particularized facts about the timing, nature, or magnitude of any changes in those relationships. Opp. Br. at 4; SAC ¶¶ 65-67. These threadbare allegations regarding "customer cancellations" and "delays" also fail under the PSLRA. *See In re Tupperware Brands Corp. Sec. Litig.,* 2023 WL 5091802, at *3 (11th Cir. Aug. 8, 2023); *NECA-IBEW Health & Welfare Fund v. Pitney Bowes Inc.*, 2013 WL 1188050, at *28 (D. Conn. Mar. 23, 2013) (dismissing claims where complaint only included generalities regarding alleged customer cancellations); *Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 532 (D.N.J. 2010) (similar).

### 3. Statements regarding projected revenues fall within the safe harbor.

In 2020, prior to the start of the Class Period, FOXF announced a five-year plan that included a goal to achieve $2 billion in revenues by 2025 and reiterated that goal during the Class Period. SAC ¶ 109. These statements are quintessentially forward-looking and were accompanied by meaningful cautionary language. *See* Opening Br. at 13-14. They therefore fall within the PSLRA's safe harbor. *See* 15

U.S.C. § 78u–5(c)(1); *see also Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1317 (11th Cir. 2019).

Plaintiff does not credibly dispute that these were forward-looking statements and were accompanied by meaningful cautionary language. Contrary to Plaintiff's arguments, Opp. Br. at 13-14, Defendants identify both the legal precedent governing application of the safe harbor here, Opening Br. at 10, and the paragraphs of the SAC that contain safe-harbor-protected statements, *see id.* at 14 n.5. This is plainly sufficient, and Defendants were not required to requote in their brief every allegation included within the SAC.[3] *See, e.g., In re Midway Games, Inc. Sec. Litig.*, 332 F. Supp. 2d 1152, 1163 (N.D. Ill. 2004); *Oklahoma Firefighters Pension & Ret. Sys. v. Xerox Corp.*, 300 F. Supp. 3d 551, 568 (S.D.N.Y. 2018), *aff'd sub nom. Arkansas Pub. Emps. Ret. Sys. v. Xerox Corp.*, 771 F. App'x 51 (2d Cir. 2019).

### 4. Defendants' risk disclosures were not false or misleading.

---

[3] Plaintiff also criticizes Defendants' opening brief for "claim[ing] that 'some' statements are opinion," but "fail[ing] to identify any specific statements." Opp. Br. at 14. In fact, Plaintiff himself pleaded that at least "some of the statements referenced above," relating to the revenue goal, "were opinions." SAC ¶ 112. Plaintiff's "waiver" argument with respect to opinion statements is similarly unavailing, and his reliance on *Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001), is misplaced. *Tolbert* stands for the well-established appellate principle that an appellee waives legal arguments by failing to adequately present or develop them, not for the proposition that a defendant waives arguments simply by citing to paragraphs of the complaint instead of fully requoting the paragraphs in a brief.

FOXF's risk disclosures also do not support a falsity claim. FOXF expressly warned of the same risks Plaintiff now claims were concealed, including volatility in demand, supply chain constraints, and the potential for inventory build-up. Opening Br. at 14-15. And contrary to the argument in the Opposition Brief, the SAC does not include any particularized factual allegations that these risks had actually materialized and that Defendants knew, at the time they made the statements in question, that these risks had actually materialized. *See, e.g., City of Southfield Gen. Employees' Ret. Sys. v. Nat'l Vision Holdings, Inc.*, 2024 WL 1376016, at *5–7 (N.D. Ga. Mar. 30, 2024) ("[P]laintiffs must allege that the risks disclosed had already materialized at the time of the statements and that defendants knew this."). The absence of such particularized factual allegations renders Plaintiff's reliance on *Merchant Capital* and *Flowers Foods* misplaced.[4]

### 5. Many of Defendants' statements constitute inactionable puffery.

Finally, many of the challenged statements are puffery. Plaintiff makes the same procedural "waiver" argument about puffery as he does for forward-looking

---

[4] *See S.E.C. v. Merch. Cap., LLC*, 483 F.3d 747, 769 (11th Cir. 2007) (risk disclosures misleading where they omitted contemporaneous facts showing the business was already underperforming, falsely implied past success in distressed debt, and presented unwarranted optimism despite internal knowledge to the contrary); *In re Flowers Foods, Inc. Sec. Litig.*, 2018 WL 1558558, at *11 (M.D. Ga. Mar. 23, 2018) (forward-looking statements not protected under the PSLRA safe harbor where plaintiff sufficiently alleged defendants had actual knowledge of the statements' falsity at the time they were made).

statements, but that argument fails for the same reasons.  Substantively, Plaintiff's only argument is that "context matters" when determining whether a statement is puffery, citing this Court's opinion in *In re Equifax Inc. Sec. Litig*. Context does matter—but here, the context is markedly different than in *Equifax*, where this Court held that defendant Equifax's repeated statements that its data privacy systems "were secure" were not puffery, because Equifax was alleged to have "failed to employ some of the most elementary cybersecurity practices." 357 F. Supp. 3d 1189, 1223-24 (N.D. Ga. 2019).  Here, Defendants' statements that, for example, "the bike business continues to look strong" or that demand for e-bikes was "relatively strong" were made in the context of FOXF's experiencing unprecedented revenue growth across multiple fiscal years.  There is no "context" pleaded in the SAC that transforms this corporate puffery into a violation of the federal securities laws.

**C. Lead Plaintiff Separately Fails To Plead Scienter With Particularity.**

Even if Plaintiff had successfully pleaded falsity, the SAC should still be dismissed for the independent reason that it fails to plead particularized facts showing that Defendants made false or misleading statements with scienter—either (i) intent to deceive, manipulate or defraud or (ii) severe recklessness in not knowing the statement is false or misleading.  *See Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1238 (11th Cir. 2008).  The inference of scienter must "be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Id.*

- 9 -

### 1.  Lead Plaintiff does not plead scienter "holistically."

While Plaintiff argues that the SAC sufficiently pleads scienter "holistically," *see* Opp. Br. at 15-16, each constituent element of a "holistic" approach still must be supported by particularized factual allegations that are lacking here: "[A]lthough factual allegations may be aggregated to infer scienter, the complaint must allege facts supporting a strong inference of scienter <u>for each defendant with respect to each violation</u>."  *City of Pontiac Gen. Emps. Ret. Sys. v. Schweitzer-Mauduit Int'l, Inc.*, 806 F. Supp. 2d 1267, 1294-95 (N.D. Ga. 2011) (emphasis added).  An amalgamation of non-particularized allegations, like those here, cannot be aggregated to plead scienter holistically.  *Id.*; *see also Jackson Inv. Grp., LLC v. Thomas*, 325 F. Supp. 3d 1334, 1353 (N.D. Ga. 2017) ("Considering all the alleged facts holistically, the court cannot infer scienter" when the plaintiff's theories were "not supported by the facts of the complaint."); *In re HomeBanc Corp. Sec. Litig.*, 706 F. Supp. 2d 1336, 1360 (N.D. Ga. 2010).

### 2.  The SAC does not plead contemporaneous knowledge or facts.

Plaintiff relies primarily on the conclusory, tangential allegations of five anonymous, low-level former employees of FOXF (including a "call center manager" and a local warehouse "cost accountant") to attempt to plead scienter. However, the allegations attributed to the "former employees" do not show that any Defendant had contemporaneous knowledge that the alleged misstatements or omissions were materially false or misleading, which is necessary to plead scienter.

As FOXF showed in its opening brief, four of the five "former employees" are not alleged to have <u>ever</u> interacted or communicated with any named Defendants or to have shared any contradictory information with them.   And the fifth former employee is alleged to have had <u>one single</u> meeting with Defendant Humphrey in January 2022, but the SAC does not in any way connect this meeting to any subsequent statement made by Defendant Humphrey, let alone show that Defendant Humphrey knew or should have known that any statement of his was false.  Without such a connection, the allegations attributed to the former employees do not sufficiently allege scienter.  *See In re Coca-Cola Enterprises Inc. Sec. Litig.*, 510 F. Supp. 2d 1187, 1201 (N.D. Ga. 2007).[5]

Without sufficiently particularized allegations of contemporaneous knowledge or facts derived from the "former employees," Plaintiff defaults to "circumstantial evidence" of scienter allegedly provided through "meetings, internal reports, and a database."   Opp. Br. at 18.   To show scienter based on reports or databases, however, a plaintiff must "describe the actual contents of contemporaneous internal reports [or meetings] that contradict or cast doubt on defendants' public statements."   *Mogensen v. Body Cent. Corp.*, 15 F. Supp. 3d

---

[5] The conclusory opinions of the COO of Specialized (one of FF's customers), "FF's former VP of Supply Chain," and factually unsupported allegations related to non-party Christoper Tutton cannot show scienter for similar reasons: There are no particularized facts linking any of these allegations to anyone at FF.  *See* SAC ¶¶ 32-33, 35, 38-40, 42, 44, 47, 51-52.

1191, 1220 (M.D. Fl. 2014). Plaintiff fails to meet that standard here, because the alleged meetings, reports and databases are not described with any degree of particularity. *See id.* Instead, they are vaguely alleged to relate to "sales and inventory" and a "database that tracked daily sales data." SAC ¶¶ 37, 39, 54. These vague allegations do not meet the PSLRA's heightened pleading standard for scienter. *See Waterford*, 2010 WL 1332574, at *14 (S.D. Fla. Mar. 30, 2010) (generalized allegation that weekly meetings discussed profit trends did not show scienter); *Jackson*, 325 F. Supp. 3d at 1348 (existence of a document did not support scienter when the plaintiff did not allege "when or even whether [the defendants] ever saw it").

### 3. Standard management activities do not "admit" scienter.

Plaintiff argues that "Defendants' own statements . . . admit scienter," Opp. Br. at 20, but this argument fails the laugh test. The statements that Plaintiff argues were "admissions" of scienter were simply normal statements relating to a business, like Defendants' statements that they monitored demand, kept a "close relationship with their customers," or maintained "solid communication with [FOXF's] customers."[6] *Id.* at 20-21. If statements like these were capable of clearing the

---

[6] Section III(B) of the Opposition is arguably a veiled attempt to belatedly invoke the core operations doctrine. The Eleventh Circuit has never adopted this doctrine, and Plaintiff's reliance on vague statements made on conference calls does not support scienter even if the doctrine applied. *See Plymouth Cnty. Ret. Sys. v. Carter's Inc.*, 2011 WL 13124501, at *17 (N.D. Ga. Mar. 17, 2011).

- 12 -

PSLRA's high bar, then "the mere active engagement of management[] would allow almost any securities fraud case to proceed into discovery"—which is not how this Court or any other court has construed and applied the PSLRA. *See Mogensen*, 15 F. Supp. 3d at 1220.

### 4. Lead Plaintiff fails to plead any financial motive.

Plaintiff's allegations concerning Defendants' routine stock sales and incentive packages also do not sufficiently plead scienter. Plaintiff contends that, because some of the Defendants sold some of their stock at different points before FOXF's shares reached their lowest possible value, "[a]ll of these sales are sufficiently suspicious in timing and amount to support a strong inference of scienter." Opp. Br. at 23. Plaintiff's conclusory assertion fails to meet the PSLRA's requirement that each of Defendant's sales occurred "at times that maximized their profits" and ignores the significant gaps between the stock sales and the announcement that caused the stock price to drop. *See Mizzaro*, 544 F.3d at 1253.

Plaintiff similarly does not demonstrate how Defendants' compensation incentives went "far beyond the usual arrangements of compensation based on the company's earnings." *Plymouth Cnty.*, 2011 WL 13124501, at *18. Plaintiff conclusorily contends that the compensation plans permitted Defendants to obtain "huge compensation." Opp. Br. at 24. But Plaintiff does not point to any particularized allegations in the SAC showing that the FOXF compensation plans

- 13 -

were out of sync with other compensation plans offered by other companies. *See Waterford Twp. Gen. Emps. Ret. Sys. v. CompuCredit Corp.*, 2009 WL 4730315, at *8 (N.D. Ga. Dec. 4, 2009) (Thrash, J.) (compensation plan did not support scienter because "Plaintiff does not identify how [the corporation]'s compensation was any different from the standard incentive normally provided to corporate officers").

**5.  Lead Plaintiff offers no counter to FOXF's non-fraudulent inference.**

In the Opening Brief, Defendants showed that the more cogent inference to be drawn from the allegations of the SAC is non-fraudulent: Like many other American corporations, FOXF saw demand and business increase rapidly with the onset of the pandemic.  It proactively took steps to ensure that it would have sufficient inventory to meet demand and avoid supply chain disruptions, and its revenues and stock price went up.  As demand and business slowed, the stock price went down.  At every step, FOXF accurately and fully disclosed its revenues, its inventory levels, and the risks of decreasing demand. *See* Opening Br. at 3-4.

Plaintiff, tellingly, does not respond to this at all: He does not even try to explain why his proposed fraudulent inference is cogent and is at least as compelling as this inference of nonfraudulent intent. *See Mizzaro*, 544 F.3d at 1238.  This Court can and should join other courts that have rejected "hindsight pleading in the wake of the pandemic." *See* Opening Br. at 23 (collecting cases rejecting attempts to bring securities fraud claims in wake of pandemic).

### D. Lead Plaintiff Fails To Plead Loss Causation.

Finally, Plaintiff fails to sufficiently plead the separate and independent element of "loss causation." While Plaintiff argues that he is not "required to disaggregate other potential causes for the drop in stock price," Opp. Br. at 25 n.16, Plaintiff must, at a minimum, "allege facts sufficient to support an inference that it was defendant's fraud—rather than other salient factors—that proximately caused a drop in share price . . . . [W]hen multiple factors are at play, the plaintiff should allege facts sufficient to apportion the losses between factors." *Waterford,* 2010 WL 3368922, at *44. Plaintiff does not do that, because he fails to adequately address two other "salient factors" disclosed in the same November 2, 2023, announcement he has put at issue—(i) the acquisition of a company that manufactures baseball bats and diamond-sports products, and (ii) the effects on sales and production caused by a UAW strike. *See* Opening Br. at 24-25. Accordingly, Plaintiff has failed to sufficiently plead loss causation. Plaintiff also fails to sufficiently plead that the disclosure of information he claims was "concealed" throughout the Class Period—including customer cancellations and backlogged orders—caused the stock price to drop in November 2023 and February 2024, respectively.

## CONCLUSION

For these reasons, and for those stated more fully in FOXF's opening memorandum of law, Defendants respectfully request that the SAC be dismissed, in its entirety and with prejudice.

- 15 -

Dated: August 11, 2025.                    Respectfully submitted,


                                          /s/ Joseph C. Weinstein
                                          Squire Patton Boggs (US) LLP
                                          Joseph C. Weinstein (admitted *pro hac vice*)
                                          Sean L. McGrane (admitted *pro hac vice*)
                                          Anna N. Huttner (admitted *pro hac vice*)
                                          1000 Key Tower, 127 Public Square
                                          Cleveland, OH 44114
                                          (216)-479-8500
                                          joe.weinstein@squirepb.com
                                          sean.mcgrane@squirepb.com
                                          anna.huttner@squirepb.com

                                          Petrina Hall McDaniel
                                          1230 Peachtree Street NE, Ste. 2200
                                          Atlanta, GA 30309
                                          (678) 272 3207
                                          petrina.mcdaniel@squirepb.com

                                          *Counsel for Defendants*

## LOCAL RULE 5.1 CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Local Rules 5.1 and 7.1D, that the foregoing has been prepared using Times New Roman, 14-point font.

Dated: August 11, 2025

*/s/ Joseph C. Weinstein*
Joseph C. Weinstein

*An Attorney for Defendants*

- 17 -

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served on August 11, 2025, by filing it using the Court's CM/ECF system, which will send electronic notification of such filing to all counsel of record.

*/s/ Joseph C. Weinstein*
Joseph C. Weinstein

*An Attorney for Defendants*
