IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RYAN MARSELIS, individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>     v.<br><br>FOX FACTORY HOLDING CORP., et al.,<br><br>   Defendants. | CIVIL ACTION FILE<br>NO. 1:24-CV-00747-TWT |

**OPINION AND ORDER**

This is a securities fraud case. It is before the Court on the Defendants' Motion to Dismiss [Doc. 56]. For the reasons set forth below, the Defendants' Motion to Dismiss [Doc. 56] is GRANTED.

### I. Background[1]

This case involves allegations that the Defendants fraudulently misled investors as to Fox Factory Holding Corp. ("Fox Factory")'s economic outlook. Defendant Fox Factory "designs, manufactures, and markets performance-defining products and systems used primarily on bikes, side-by-sides, on-road vehicles with and without off-road capabilities, off-road vehicles and trucks, ATVs, snowmobiles, and specialty vehicles and applications." (2d Am. Compl. ¶ 19). For most relevant times, Fox Factory "was

---

[1] The Court accepts the facts as alleged in the Second Amended Complaint as true for purposes of the present Motion to Dismiss. *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

divided into two primary groups: Specialty Sports Group ("SSG"), which designs and manufactures high-performance suspension products for bikes, and Fox's Powered Vehicle Group ("PVG"), which designs and manufactures suspension components for off-road and specialty vehicles." (*Id.* ¶ 2). Defendant Michael C. Dennison has been for all relevant times the CEO and Director of Fox Factory. (*Id.* ¶ 20). Defendant Scott R. Humphrey served as CFO of Fox Factory from August 4, 2020, until April 5, 2023. (*Id.* ¶ 23). Defendant Maggie E. Torres was then Interim CFO from April 3, 2023, until June 12, 2023, at which point she became Director of Accounting Projects. (*Id.* ¶ 22). Defendant Dennis C. Schemm was appointed CFO on June 12, 2023, and remains in that position. (*Id.* ¶ 21). Named Plaintiff Ryan Marselis bought common stock in Fox Factory and seeks to represent a class of persons and entities that purchased Fox Factory common stock between May 6, 2021, and November 2, 2023 ("Class Period"), who were damaged by the Defendants' alleged fraud. (*Id.* ¶¶ 18, 180).

When the COVID-19-related lockdowns occurred in 2020, demand for bicycles exploded as people spent more time outdoors. (*Id.* ¶ 31). Consequently, original equipment manufacturers ("OEMs") began ordering significantly more product from component part manufacturers, such as Fox Factory. (*Id.* ¶ 32). "However, this soaring demand was extremely short lived. New consumer demand for bikes quickly began to wane and by October 2021, demand for

bicycles had fallen back to, or below, pre-pandemic levels where it stayed for the remainder of the Class Period." (*Id.* ¶ 5).

Despite that, the Named Plaintiff alleges that the Defendants made numerous misleading statements during the Class Period about the demand for Fox Factory's products. For example, on May 6, 2021, Fox Factory announced its financial results for the first quarter of fiscal year 2021, which showed an increase of 52.2% in reported sales over the same quarter in 2020. (*Id.* ¶ 71). On the same day, Defendants Fox Factory, Humphrey, and Dennison stated, *inter alia*, that there was "unprecedented demand growth," that the SSG sales increase was "primarily driven by increased demand in both the . . . [OEM] and aftermarket channels," that "[t]he tectonic shift created in the consumer demand by the pandemic seems more than just a transitory bubble," and, in response to an analyst's question, that the strength of SSG's sales were "incredibly strong" on both the OEM side and the aftermarket side. (*Id.* ¶¶ 72-74). These Defendants made similar comments in press releases, Form 10-Qs, and calls with investors and analysts for the next several quarters after reporting increases in sales. (*Id.* ¶¶ 76-82, 84-96, 98, 101-05, 107, 109-11, 113-14).

Starting with the fourth quarter of fiscal year 2022, Fox Factory reported a decline in sales in the SSG group. (*Id.* ¶ 115). Defendant Dennison asserted that "the Company's results 'continue[d] to give [it] confidence in [Fox's] long-term vision" of a target revenue by 2025 and "therefore, [Fox] [was]

now beginning to set [its] sights on even more ambitious goals." (*Id.*). Further, although Defendant Dennison acknowledged that SSG "'could be down anywhere between high single digits to high teens' in 2023 before 'returning to [its] long-term growth expectations,'" Defendant Dennison made certain excuses for an increase in inventory and stated that he was confident that Fox would reach their target revenue by 2025. (*Id.*). The first quarter of fiscal year 2023 showed a bigger decline in sales in the SSG group, which a press release said was driven by a "return to seasonality and the impacts of higher levels of inventory across various channels." (*Id.* ¶ 98). The trend continued when the SSG group's sales declined by an even larger amount in the second quarter of fiscal year 2023. (*Id.*). Defendant Dennison asserted that demand was "strong," "hasn't been the problem," and was "up significantly year-on-year over 100%." (*Id.*). Finally, on November 2, 2023, Fox Factory released the numbers from the third quarter of fiscal year 2023, which showed another decline that was bigger than the previous ones. (*Id.* ¶ 130). Defendant Dennison attributed this decline to "slower buying patterns." (*Id.* ¶ 131). This news caused the price of Fox Factory's common stock to decline 37.34%. (*Id.* ¶ 134).

      The Named Plaintiff asserts that—up until the announcement on November 2, 2023—the Defendants misled investors about the demand for Fox Factory's products. (*Id.* ¶¶ 75, 83, 97, 86, 97, 99, 106, 108, 112, 118, 120). He consequently asserts claims for violating Section 10(b) of the Exchange Act and SEC Rule 10b-5 (Count I) as well as violating Section 20(a) of the Exchange

Act (Count II). (*Id.* ¶¶ 186-99). This Court has already dismissed without prejudice the Named Plaintiff's complaint once for failing to adequately plead his claims. (*See generally* First Mot. to Dismiss Op. & Or. [Doc. 49]). The Named Plaintiff has refiled his action and the Defendants move for complete dismissal of the Named Plaintiff's suit once more.

## II.   Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon

which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

A private securities plaintiff must go further and satisfy a heightened "triple-layered pleading standard." *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1317 (11th Cir. 2019). "To survive a motion to dismiss, a securities-fraud claim brought under Rule 10b–5 must satisfy not only the run-of-the-mill federal notice-pleading requirements, but also the heightened pleading standards found in Federal Rule of Civil Procedure 9(b) and the special fraud pleading requirements imposed by the Private Securities Litigation Reform Act of 1995." *Id.* at 1317-18 (citations omitted). Rule 9(b) "requires a plaintiff to allege specifically (1) which statements or omissions were made in which documents or oral representations; (2) when, where, and by whom the statements were made (or, in the case of omissions, not made); (3) the content of the statements or omissions and how they were misleading; and (4) what the defendant received as a result of the fraud." *Id.* at 1318 (citation omitted). Meanwhile,

> [t]he PSLRA—with some overlap—requires a complaint to "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." It also requires, "with respect to each act or omission alleged," that a complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." The required state of mind, [the Eleventh Circuit has] held, is an "intent to defraud or severe recklessness on the part of the defendant." And a "strong inference" is one that is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Although scienter may be inferred from

6

an aggregate of factual allegations, it must be alleged with respect
to each alleged violation of the statute.

*Id.* (quotation marks and citations omitted).

### III.   Discussion

In his second attempt, the Named Plaintiff asserts two causes of action against the Defendants. The Defendants assert several arguments in favor of dismissal of the Second Amended Complaint. The Court once more concludes that the Named Plaintiff has failed to state a claim for either count because the Named Plaintiff has failed to remedy the defects of the Amended Complaint as outlined in the First Motion to Dismiss. The Court will first review the contents of the First Motion to Dismiss, then address the deficiencies within the Second Amended Complaint.

### A. The First Motion to Dismiss

In the First Motion to Dismiss within this action, the Defendants sought to dismiss the Named Plaintiff's Amended Complaint, in part, for his failure to plead the securities claims with particularity. (*See* First Mot. to Dismiss Op. & Or., at 7). The Court reviewed the Amended Complaint, where the Named Plaintiff premised his Section 10(b) and Rule 10b-5 claim on certain statements made by the Defendants organized chronologically by quarter. (*See* Am. Compl. ¶¶ 58-144). Ultimately, the Court ruled in favor of dismissal of the Amended Complaint because "the Named Plaintiff [ ] does not even attempt to explain why specific statements are misleading." (First Mot. to Dismiss Op. & Or., at 9).

7

Specifically, the Court took issue with the fact that the Amended Complaint lumped a number of alleged false and misleading statements and attempted to explain why those statements were false and misleading as a group, instead of addressing why *each* specific statement was misleading. (*See id.* at 9-11). While those broad generalizations could explain why some of the statements were false and misleading, "[t]he Court [was] left to speculate based on [ ] reasons that are repeated almost verbatim for numerous statements spanning across several quarters." (*Id.* at 11). Furthermore, the Court struck down the Named Plaintiff's argument that there is no requirement that he must repeat all of the specific facts demonstrating falsity after each individual misstatement as it "flies straight into the face of Rule 9(b) and the PSLRA." (*Id.* at 12). Because the Named Plaintiff failed to state a claim for Count 1, the Court also dismissed the Named Plaintiff's Section 20(a) claim in Count 2. (*See id.* at 12-13 (citing *In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1276 (11th Cir. 2016)).

However, the Court granted the Named Plaintiff leave to amend. (*See id.* at 13-14). The Named Plaintiff had thirty days to file a Second Amended Complaint as of the date of the Order to correct the deficiencies listed. (*Id.* at 14). The Named Plaintiff timely did so. (*See generally* 2d Am. Compl.).

## B. The Second Amended Complaint

The Second Amended Complaint is an effort in reorganization. As the Named Plaintiff admits, the Second Amended Complaint "separates the

various statements by topic, such as statements regarding 'increasing demand,' statements regarding inventory, risk disclosure statements, and the promised $2 billion in revenues." (Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss, at 6 [Doc. 61]). The Named Plaintiff also claims that he has added facts that specifically state why each of the statements were false and misleading but does not direct the Court to any additions within the Second Amended Complaint. (*Id.*).

While the Court acknowledges that additional facts have been added to support why certain statements were materially false or misleading, the deficiencies present within the Amended Complaint still persist in the Named Plaintiff's second bite at the apple. For example, the Second Amended Complaint alleges that statements made by the Defendants about demand projections are false or misleading but then only addresses why the statements about Fox's increasing demand are false. (*See* 2d Am. Compl. ¶¶ 73, 75). Similarly, the Second Amended Complaint alleges statements made in Securities Exchange Commission ("SEC") filings were inaccurate yet fails to explain how such reporting was materially false or misleading in the next generalized set of explanations. (*See id.* ¶¶ 76, 84). The Named Plaintiff then funnels thirteen paragraphs to a single paragraph to explain why every one of those statements is materially false or misleading. (*See id.* ¶¶ 84-97). These pleading deficiencies continue throughout the entire Second Amended Complaint, much like the Amended Complaint. While the Court acknowledges

9

that the Named Plaintiff's pleadings have improved since the Amended Complaint, they still do not meet the standard required by Rule 9(b) or the PSLRA because the Named Plaintiff fails to identify why *each individual statement* made by the Defendants is false.

Still, the Named Plaintiff argues that "the 'use of a single set of reasons to explain why various statements are false' is an 'acceptable means of identifying the reasons for falsity.'" (Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss, at 6 (quoting *City of Pontiac Gen. Emps.' Ret. Sys. v. Stryker Corp.*, 2011 WL 2650717, at *7 (W.D. Mich. Jul. 6, 2011)). However, a review of *City of Pontiac* shows that the court's holding was the exception, not the rule. There, the plaintiffs brought securities claims against the defendants on the basis of numerous false and misleading statements. *Id.* at *3. The plaintiffs explained how such statements were misleading in a single paragraph, where they listed a "laundry list of adverse facts." *Id.* at *5. The defendants' primary argument for dismissal of the complaint was that it was a "puzzle pleading," in that it required the reader to "puzzle" out the details of the plaintiff's claim. *Id.* Specifically, like the Defendants here, the defendants argued that the complaint failed to plead adequately because it left the court and the defendants to figure out what statements are alleged to be false and why. *Id.* This is because, in the defendants' view, a reader is left to wonder whether certain information applies to one misstatement or another. *Id.* Although the court agreed with the defendants that the complaint resembled a puzzle

10

pleading in many respects, the court still concluded that such a pleading was acceptable because the plaintiffs intended for "all reasons [to] apply to the statement, such that there is no need to match the statement with the reason." *Id.* at *6-7.

However, despite this conclusion, the court was clear that it "would be well within its discretion [to dismiss] the [complaint] and [require the plaintiffs] to amend to be more clear and direct in identifying the alleged false statements." *Id.* at *6. Specifically, the court found that the pleading wasn't even a violation of Rule 9(b), but instead a violation of Rule 8(a)(2) for failure to plead a plain statement. *Id.* at *6 n.5. Yet, the court chose not to dismiss the complaint because "[b]oth the [court] and [the defendants] have already spent much time digesting the [complaint], and to the extent it provides a means to clarify the statements, that course is preferable to another amended pleading." *Id.* at *6. In the interest of judicial efficiency *and because every statement was properly responded to*, the court opted not to dismiss the complaint for failure to plead with particularity. *Id.*

The only likeness between *City of Pontiac* and this case is the fact that the plaintiff pled misstatements and explained why such misstatements were materially false and misleading *en masse*. However, apart from this similarity, two key differences exist. First, unlike *City of Pontiac*, the Court is less inclined to look past the Rule 8 and 9 violations within the Second Amended Complaint, especially where the Court explicitly described the defects contained within the

11

pleadings within its previous Order. (*See* First Mot. to Dismiss Op. & Or., at 12 (holding that the Named Plaintiff's belief that he does not need to repeat all of the specific facts determining falsity after each individual misstatement is incorrect and that the facts required to demonstrate the falsity of each alleged misstatement is different)). Second, unlike the complaint in *City of Pontiac*, the Named Plaintiff's explanations do not cover every misstatement alleged within the Second Amended Complaint, which fails to comply with the PSLRA.

To give the Named Plaintiff credit, the Second Amended Complaint does include more facts than the Amended Complaint supporting his explanation for why certain statements made by the Defendants were materially false or misleading. The Second Amended Complaint contains less boilerplate language than the Amended Complaint. Yet, the Court and the Defendants are still left to speculate (1) which specific statements are materially false or misleading, (2) which reasons match with which statements, (3) which statements are materially false or misleading by omission, and (4) to what degree are such statements materially false or misleading. (*See* First Mot. to Dismiss Op. & Or., at 11). Instead of generalized explanations applied to statements made chronologically, the generalized statements are now constrained by each topic within the Second Amended Complaint to give the appearance of tailored reasoning. This is not enough to adequately plead a violation of securities law. *See, e.g., City of Pontiac Gen. Emps. Ret. Sys. v. Schweitzer-Maduit Int'l, Inc.*, 806 F. Supp. 2d 1267, 1293-94 (N.D. Ga. 2011);

*In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1073-75 (N.D. Cal. 2001); *Born v. Quad/Graphics, Inc.*, 521 F. Supp. 3d 469, 478-79 (S.D.N.Y 2021).

In sum, the Court finds that the Named Plaintiff has not satisfied the triple-layered pleading standard in this case. Additionally, because the Court finds that the Named Plaintiff failed to adequately plead his claims under Section 10(b) and Rule 10b-5, the Named Plaintiff's Section 20(a) claim fails as well. *See Galectin Therapeutics,* 843 F.3d at 1276 (11th Cir. 2016) (dismissing claim under Section 20(a) for failure to allege a "primary violation"). Therefore, the Court dismisses the Second Amended Complaint in its entirety.

### C. Dismissal With or Without Prejudice

Unlike the First Motion to Dismiss, the Named Plaintiff does not request leave to amend his complaint. However, the Defendants request the Court to dismiss the Second Amended Complaint with prejudice. (Br. in Supp. of Defs.' Mot. to Dismiss, at 15 [Doc. 56-1]). A dismissal of the Second Amended Complaint with prejudice bars the Named Plaintiff from amending his pleadings and bars the Named Plaintiff from pursuing the same action further. *See McNair v. Johnson*, 143 F.4th 1301, 1306 (11th Cir. 2025) (explaining the consequences of a dismissal without prejudice). "Dismissal with prejudice is proper when a more carefully drafted complaint would not state a claim for relief." *Arthur v. JP Morgan Chase Bank,* NA, 569 F. App'x 669, 686 (11th Cir. 2014).

13

Generally, district courts have discretion in determining whether to allow a plaintiff to amend his pleadings. *See Pinnacle Advert. and Mktg, Grp., Inc. v. Pinnacle Advert. and Mktg. Grp., LLC*, 7 F.4th 989, 999-1000 (11th Cir. 2021) (stating that the standard of review for a district court's decision to grant leave to amend is abuse of discretion); *but see Eiber Radiology, Inc. v. Toshiba America Medical Sys., Inc.*, 673 F. App'x 925, 929 (11th Cir. 2016) (noting that a district court's discretion to dismiss a complaint without leave to amend is "severely restricted" by Federal Rule of Civil Procedure 15(a)(2), which requires leave to amend be freely given when justice so requires). The Eleventh Circuit generally encourages district courts to exercise their discretion in favor of allowing plaintiffs to amend their pleadings. *Id.* at 1000. However, this does not mean that every dismissal should be without prejudice. In *Arthur*, the Eleventh Circuit affirmed a district court's dismissal with prejudice when the appellants amended their complaint on three occasions and represented to the district court that they would be adding "significant additional facts" that were directly relevant to their claims in a subsequent amendment. *Id.* The Eleventh Circuit affirmed because it found implausible that further pleading would remedy the defects in the complaint due to the repeated amendments and the purported additions. *Id.* Additionally, when a plaintiff is represented by counsel, the Eleventh Circuit has never "required district courts to grant counseled plaintiffs more than one opportunity to amend a deficient complaint" and has affirmed a district court's decision to deny a plaintiff a second

14

opportunity to amend, especially when the plaintiff failed to properly request it. *Eiber Radiology*, 673 F. App'x at 930. Here, the Court identified the defects in the Amended Complaint in its Order granting the Motion to Dismiss and granted the Named Plaintiff leave to amend to fix those defects. Yet, the Named Plaintiff returned with mostly cosmetic changes within their Second Amended Complaint. Accordingly, the Second Amended Complaint is due to be dismissed with prejudice.

## IV.  Conclusion

For the foregoing reasons, the Defendants' Motion to Dismiss [Doc. 56] is GRANTED. The Second Amended Complaint is dismissed with prejudice for the reasons stated in this Order. The Clerk is directed to enter judgment in favor of the Defendants and close the case.

SO ORDERED, this  10th  day of February, 2026.

THOMAS W. THRASH, JR.
United States District Judge

15